Argued and submitted September 28, 2010, affirmed March 23, petition for review denied November 10, 2011 (351 Or 318)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## HAROLD JONES,
aka Drake Harold Ezzark,
*Defendant-Appellant.*

Multnomah County Circuit Court
080532328; A140169

250 P3d 452

Ryan T. O'Connor, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

David B. Thompson, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were

John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant appeals from a judgment of conviction for possession of cocaine, ORS 475.884, assigning error to the trial court's denial of his motion to suppress. Defendant argues that, although the incriminating evidence was obtained following a lawful traffic stop of a car in which he was a backseat passenger, it nonetheless derived from a subsequent unlawful seizure of his person in violation of Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution.[1] In particular, he argues that a police officer stopped him without any suspicion of wrongdoing when the officer ordered him to leave the car, asked him if he was carrying any drugs or weapons, and, when defendant denied doing so, asked for and received consent to search. In light of the Oregon Supreme Court's recent decision in *State v. Ashbaugh*, 349 Or 297, 244 P3d 360 (2010) (decided after this case was briefed and argued), we affirm.

In reviewing the denial of a motion to suppress, we are bound by the trial court's express and implicit findings of fact if there is constitutionally sufficient evidence in the record to support them, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), and we review the legal conclusions based on those facts for legal error, *State v. Warner*, 136 Or App 475, 478, 901 P2d 940 (1995).

The facts are as follows: At about 4:30 a.m., Officer Berne of the Portland Police Bureau saw a car pull out of a motel parking lot onto a major thoroughfare, Sandy Boulevard, without making a complete stop before crossing the sidewalk and entering traffic. Berne initiated a traffic stop and pulled up behind the car. He approached the driver's side window and saw three people: the driver, a front seat passenger, and defendant, who was in the back seat. He asked all three to provide identification. The driver handed

---

[1] Article I, section 9 provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

The Fourth Amendment provides, in part:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

Berne identification, and defendant and the front-seat passenger, who did not have any, told Berne their names and dates of birth. Before Berne returned to his car to check the status of the driver's license, he told defendant and the other passenger that they were free to leave. They both remained in the car.

A backup officer, Jensen, arrived on the scene and parked behind Berne's patrol car. Berne, meanwhile, discovered that the driver did not have a valid license and told Jensen that the car had to be towed. He asked Jensen to "start getting people out of the car." By that point, a third officer, Fox, arrived. Jensen first asked the driver to step out and to stand and wait with Fox while Berne prepared her citation. Next, Jensen asked defendant to step out of the car. Defendant complied. Jensen then asked defendant if he had any drugs or weapons on him. When defendant responded that he did not, Jensen asked for consent to search. In response, defendant turned around and placed a dollar bill and a "really small white opaque object"—later identified to be a "rock" of cocaine—on the trunk. Then, still without speaking, defendant spread his feet apart, placed his hands behind his head, and interlaced his fingers, assuming a posture Jensen referred to in his report as "the standard search position." Jensen found a second rock of cocaine in defendant's pocket. About five minutes elapsed between Berne telling defendant he was free to leave and Jensen's interaction with defendant.

Following Jensen's search, defendant was arrested and given *Miranda* warnings. He admitted to Berne that he had smoked cocaine earlier that day and that the rocks discovered by the officers were left over from that prior use. Meanwhile, Jensen was performing a pre-tow inventory search of the vehicle and found two additional cocaine rocks in the backseat where defendant had been sitting. Jensen told Berne of the discovery, and Berne asked defendant about the drugs found in the car. Defendant replied that those rocks must have fallen out of defendant's pocket. All four rocks later tested positive for cocaine.

At the hearing on his motion to suppress, defendant argued that the four rocks of cocaine and his admissions to

the police should be suppressed because they were the product of an unlawful seizure. The trial court heard conflicting testimony, made several findings (reflected in our recitation of the facts), and reached the following legal conclusions: (1) Defendant was not "seized" in the constitutional sense when the officer asked to search him, and (2) defendant's nonverbal act of assuming the "standard search position" constituted voluntary consent. The trial court explained:

"The officer, as a matter of appropriate police nosiness coupled with concerns for safety during the tow and so forth, asked the defendant whether he had guns—weapons or drugs and would he mind to be—if he were searched, and the defendant turned around and put his dollar with what turned out to be a rock on the hood—on the trunk of the car and assumed the position, absent—well, assumed the position, was searched, and that's how the rock in the pocket was found.

"* * * * *

"The mere fact that there are armed and uniformed police officers, now several of them, present, three police cars, that it's 4 in the morning and all of that, is not considered by itself to be sufficient to negate voluntariness. His—his consent was voluntary as understood by our appellate courts. And he was Mirandized and his statements were also voluntary."

The trial court denied defendant's motion "in all respects." Defendant elected to proceed to a stipulated facts trial, and the court found him guilty of intentionally possessing cocaine. This appeal ensued.

■ Defendant's appeal rests on a sole contention: that Jensen seized him when he asked him to step out of the car, asked him if he had drugs or weapons on him, and, when defendant said that he did not, asked him for consent to search. Defendant does not argue that he was seized before that time, when Berne took his personal identification information and went to check for warrants, probably because the trial court found as fact that Berne told defendant at that time that he was free to leave. Nor does defendant argue that his actions after Jensen's request—"assum[ing] the position"—was anything other than voluntary consent.

In *Ashbaugh*, the Supreme Court stated the legal test for determining when police conduct constitutes a seizure for purposes of triggering the reasonable suspicion requirement of Article I, section 9:

> "A 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution: (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances *would* believe that (a) above has occurred."

349 Or at 316 (emphasis in original). Defendant, relying on cases decided before *Ashbaugh* (including this court's opinion in that case, 225 Or App 16, 200 P3d 149 (2008)), argues that a reasonable person, in the presence of three officers and three patrol cars with overhead lights on, at 4:30 a.m., having denied that he was carrying drugs or weapons, would, upon being asked thereafter for consent to search, feel that his liberty or freedom of movement had been constrained—would feel, in other words, that he did not have the option of simply refusing to respond and walking away.

Although defendant might well have prevailed under this court's opinion in *Ashbaugh*, the Supreme Court's reversal in that case forecloses defendant's argument. In that case, two police officers encountered the defendant and her husband in a public park on a summer afternoon. 349 Or at 300-01. The officers lawfully arrested the husband for violating a restraining order and took him to a police car. The defendant remained in the park and observed her husband being taken away. Five minutes later, the officers "recontacted" the defendant and one of the officers "asked her about the contents of her purse, and asked whether she would permit [the officer] to search the purse." *Id.* at 316-17.

Given those facts, the Supreme Court explained:

> "Although it is possible to restrict a person's liberty and freedom of movement by purely verbal means, there is no evidence that would support a conclusion that that is what happened here. Certainly, the *content* of [the officer's] questions did not cause defendant to be seized: As we repeatedly have observed, even though [the officer] asked defendant a

question that one private citizen ordinarily would not ask another, defendant does not point to anything about [the officer's] words that would be perceived as 'show of authority that restrict[ed her] freedom of movement.' [*State v.*] *Rodgers/Kirkeby*, 347 Or [610,] 622[, 227 P3d 695 (2010)].

"Neither is there any basis for concluding that [the officer's] manner or actions involved a 'show of authority.' [The officer's] request was not accompanied by any physical action that could be construed as threatening or coercive— he did not, for example, position himself and his fellow officer in a way that would suggest to defendant that she was surrounded. *See Rodgers/Kirkeby*, 347 Or at 627 (illustrating that tactic). In fact, the trial court found that the conversation between [the officer] and defendant was 'relaxed and nonconfrontational,' and we are bound by that finding, because there is evidence in the record to support it. Moreover, the officers had returned defendant's identification to her and left her alone while completing the arrest and transportation of her husband. Thus, while it may have been true that defendant had been unlawfully detained by police some minutes before and had watched a clear show of authority directed at her husband, those circumstances had ended. They did not create the kind of atmosphere that would convey to a citizen that she was not free to go at the later time.

"Considering the totality of the circumstances, we conclude that [the officer's] actions in asking defendant the questions that he did under the circumstances that existed did not 'intentionally and significantly' restrict or interfere with her liberty. We further conclude that an objectively reasonable person in defendant's circumstances would not believe that [the officer] had done so. Accordingly, we reject defendant's contention that, in light of the surrounding circumstances, [the officer's] questions about the contents of her purse and his request for consent to search the purse amounted to a seizure for purposes of Article I, section 9, of the Oregon Constitution. It follows that, whatever connection there might be between those questions and defendant's consent to the search of her purse, the consent was not the product of an unlawful seizure."

*Id.* at 317-18 (emphasis and fourth bracket in original).

As in *Ashbaugh*, defendant here challenges a police officer's request to search that followed the lawful seizure of a

companion. In *Ashbaugh*, the defendant's husband was arrested and the defendant remained in a public park for about five minutes before the officers returned and reinitiated contact with her. Here, the driver of the car in which defendant was a passenger was lawfully pulled over for a traffic infraction. Although the officer retained the driver's identification to further investigate the traffic stop, the officer told defendant that he was free to leave. Defendant remained in the car and was there for about five minutes before a second officer contacted defendant. Also, in *Ashbaugh* as here, the police officer's request for consent to search occurred after the defendant had denied possessing contraband.

Defendant argues that, by virtue of asking him if he had drugs or weapons, Jensen was implicitly accusing defendant of criminal activity. However, without a "show of authority that restrict[ed] [defendant's] freedom of movement," "the *content* of [Jensen's] question[ ] did not cause defendant to be seized." *Ashbaugh*, 349 Or at 317 (internal quotation marks omitted; emphasis in original). There is no such "show of authority," as the Supreme Court has implicitly construed that term in *Ashbaugh*, on this record. Jensen was the sole officer talking to defendant; Berne was still in his patrol car preparing the driver's citation, and a third officer was standing some distance away with the driver. There were no weapons drawn, and Jensen testified that he spoke with defendant in the same tone he used when answering counsels' questions at the motion hearing. We conclude that, under *Ashbaugh*, Jensen did not "intentionally and significantly" interfere with defendant's liberty or freedom of movement and, also under that case, we must conclude that a reasonable person in defendant's situation would not have believed Jensen had done so.[2]

Affirmed.

---

[2] For the same reasons, we reject defendant's argument under the Fourth Amendment. *See United States v. Drayton*, 536 US 194, 200-01, 122 S Ct 2105, 153 L Ed 2d 242 (2002) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. * * * If a reasonable person would feel free to terminate the encounter, then he or she has not been seized.").