Argued and submitted March 30, reversed and remanded June 22 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ASHLEY ANN RUTLEDGE,
*Defendant-Appellant.*

Douglas County Circuit Court
07CR2448FE; A142053

260 P3d 532

Jonah Morningstar, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter Gartlan, Chief Defender, and Lindsey K. Detweiler, Deputy Public Defender, Office of Public Defense Services.

Justice J. Rillera, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant appeals from a conviction, after a stipulated facts trial, for possession of methamphetamine, ORS 475.894. She argues that her consent to a search of her handbag was the result of an illegal stop and that the trial court therefore erred in denying her motion to suppress. *See State v. Hall*, 339 Or 7, 115 P3d 908 (2005) (when a defendant's consent for officer to search defendant was product of unlawful stop, evidence obtained during the stop was inadmissible). We agree that defendant's interaction with the sheriff's deputies became a stop before the deputies acquired the evidence in question and that they did not have reasonable suspicion to support a stop. We therefore reverse defendant's conviction.

We state the facts, most of which are not disputed, in accordance with the trial court's explicit and implicit findings. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). At about 2:00 a.m. on November 14, 2007, defendant was a passenger in a car in Winston. Two Douglas County sheriff's deputies stopped the car for a traffic violation as it left a motel. The motel had a reputation for narcotics activity, and the deputies suspected that the driver of the car was involved with narcotics. After the stop, Deputy Norris asked the driver for his license, registration, and insurance information. In accordance with his normal routine, he also asked defendant for her name and date of birth; he testified that he did so because she was a potential witness. He did not use that information to check whether there were any outstanding warrants on defendant, and he does not believe that he wrote the information down. During the course of the traffic stop, Norris asked the driver for permission to search the car, and the driver consented. Norris then asked defendant to get out of the car so that he could search it. During the search, Norris discovered a purse on the floor of the passenger side. He picked it up but did not give it to defendant; instead, he asked defendant if the purse was hers.[1] Defendant responded by

---

[1] The trial court did not make a finding regarding where the purse was located during the encounter, but defendant testified without contradiction that Norris picked up her purse. The testimony of the two deputies indicated that Norris had control of the purse as well; Norris was in the midst of his search of the vehicle on the passenger side when he found the purse and then questioned defendant.

asking why Norris needed to know and stating that he could not look in it. Defendant's refusal to permit a search of the purse and her generally nervous attitude raised Norris's suspicions. He told her that he would not take her to jail for whatever was in the purse but would only issue a citation. He then asked if she was only concerned about a marijuana pipe or a methamphetamine pipe. Defendant replied that she had a meth pipe. Norris asked defendant to remove the pipe from the purse, and she did so. Defendant testified that she admitted that she had the pipe because Norris had the purse in his hand and she thought that he was going to go through it anyway. At no time during the traffic stop did the officers tell defendant either that she had to stay or that she was free to go.

The deputies issued a citation to defendant, and she was indicted for unlawful possession of methamphetamine. The trial court denied defendant's motion to suppress on the ground that the deputies did not stop her; it found that there was nothing about their conduct that would lead a reasonable person to believe that he or she was not free to leave. The court also suggested that Norris had reasonable suspicion that would justify a stop if one had occurred. We conclude that Norris stopped defendant when he questioned her about the contents of the purse while exercising control over it and that he did not have reasonable suspicion to justify the stop.

The fundamental distinction between encounters between police and citizens that Oregon courts describe as "mere conversation," which have no constitutional significance, and those encounters that are seizures, which implicate Article I, section 9, of the Oregon Constitution, is that a seizure involves the imposition, by physical force or some show of authority, of some restraint on the individual's liberty. *State v. Ashbaugh*, 349 Or 297, 308-09, 244 P3d 360 (2010). In *Ashbaugh*, the Supreme Court held that a seizure occurs

"(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances would believe that (a) above has occurred."

349 Or at 316 (emphasis deleted). Unlike previous judicial formulations of what constitutes a seizure from the perspective of the person who is arrested, the *Ashbaugh* test is objective. Under it, we must consider what the officers actually did and how a reasonable person would perceive those actions; the individual citizen's subjective perceptions are now irrelevant. During a noncriminal traffic stop, "police inquiries in and of themselves require no justification and do not necessarily implicate Article I, section 9." *State v. Rodgers/ Kirkeby*, 347 Or 610, 624, 227 P3d 695 (2010). But, when the police inquiries are "unrelated to a traffic violation" and are "combined with physical restraint or a police show of authority," then a citizen's freedom under Article I, section 9, may be violated. *Id.* We discuss defendant's arguments in that light.

Defendant points to three separate events during her encounter with Norris, each of which, she asserts, constituted a stop. She first argues that Norris's asking for her name and date of birth would lead her, and any reasonable person, to believe that she was not free to go but was the subject of an investigation. The problem with that argument is that Norris did not ask for defendant's identification, and there is no evidence indicating that he was using the information she gave him to investigate her, such as checking for warrants, things that could have constituted a sufficient show of authority to turn the encounter into a stop. *See, e.g., State v. Ayles*, 348 Or 622, 628, 237 P3d 805 (2010) (state acknowledged defendant passenger was seized when officer took and retained his identification without reasonable suspicion of criminal activity); *State v. Parker*, 242 Or App 387, 394, 255 P3d 624 (2011) (stop occurred when officer asked passenger about warrants, requested his identification, and wrote down identifying information, and went back to the police car to run a warrants check); *State v. Lay*, 242 Or App 38, 44-45, 252 P3d 850 (2011) (stop occurred when officer took passenger's driver's license and requested a warrant check by radio within his earshot). Without those or similar actions, and in the context of all the other circumstances that existed at the time, a reasonable person would not believe that Norris had deprived her of her liberty or freedom of movement by his questions.

Defendant next asserts that Norris stopped her when he asked her to get out of the car so that he could search it. So far as the evidence shows, Norris simply needed defendant to move so he could do his job of conducting a consent search of the car. That is no different in principle from a janitor asking a person to move from a portion of a floor that the janitor is sweeping. In neither case is there any implication that the officer or janitor is asserting any authority to limit where the person may go or what the person may do after complying with the request. In *State v. Amaya*, 336 Or 616, 630-31, 89 P3d 1163 (2004), the Supreme Court noted that an officer may take reasonable steps respecting the passengers in a stopped vehicle, specifically including asking them to leave the vehicle so the officer may search it. Here, Norris did nothing more than the Supreme Court contemplated in *Amaya*. Defendant relies on *State v. Johnson*, 105 Or App 587, 590-91, 805 P2d 747 (1991), in which the police, who were investigating a reported fight, summoned the defendant out from behind a bush, asked if he had witnessed the fight, and then asked him what was in his pockets. In this case, Norris's request that defendant get out of the car had none of the investigative or coercive character of the officers' actions in *Johnson*.

Finally, defendant argues that Norris's questioning of her about the contents of her purse, including asking whether "there was just a marijuana pipe or a meth pipe in her purse," was a stop. Defendant contends that the state incorrectly casts the encounter as mere conversation because Norris was accusing her of criminal activity through his questions and maintained control over her purse. By themselves, the questions Norris posed were insufficient to constitute a stop because, although they were unrelated to the initial traffic stop, they were not and would not appear to a reasonable person as an exercise of authority that interfered with defendant's freedom of movement. In that respect, this case is like *State v. Jones*, 241 Or App 597, 250 P3d 452 (2011), in which one officer told the defendant, a passenger in a stopped car, that he was free to leave. Shortly afterwards, another officer asked the defendant to get out of the car. After the defendant complied, the officer asked him if he had any drugs or weapons. When the defendant said that he did not,

the officer asked the defendant to consent to a search. In response, the defendant placed a dollar bill and a rock of what proved to be cocaine on the trunk of the car and then placed himself into the standard position for a person being searched. *Id.* at 600. Relying on *Ashbaugh*, we held that there was no show of authority on the officer's part that restricted the defendant's freedom of movement, and, as a result, the content of the officer's questions did not cause the defendant to be seized. *Id.* at 604.

The crucial difference between this case and *Jones*, however, is that Norris had defendant's purse in his possession when he asked the crucial question, after defendant had asserted her authority over the purse by telling Norris that he could not look in it. Norris's control over the purse substantially limited defendant's freedom to come or go. Norris acted because defendant's response to his question about the ownership of the purse raised his suspicions about its contents. Those suspicions were why he told defendant that he would only give her a citation if the purse contained a marijuana or methamphetamine pipe, and his statement led to the production of the evidence at issue.

The Supreme Court has held that taking a person's identification to check for warrants and questioning the person about illegal activity constitutes a stop. The court noted that it is doubtful that a person in that position would think that he or she was free to leave. *State v. Thompkin*, 341 Or 368, 378-79, 143 P3d 530 (2006); *see also Lay*, 242 Or App at 44 (defendant stopped when officer took driver's license; stop continued throughout entire encounter). The same principle applies to holding a person's purse, which normally contains the person's identification and other items of value, making the situation essentially identical with those in *Thompkin* and *Lay*. Even without that consideration, a reasonable person would believe that an officer who was maintaining possession of the person's property while asking questions about it was significantly interfering with the person's freedom of movement. Under the test in *Ashbaugh*, defendant was stopped. The next question, then, is whether Norris had reasonable suspicion to support the stop.

Norris testified that defendant "was nervous and had some anxiety about me looking in her purse, so I figured there was probably something inside her purse that she didn't want me to find." He also stated that "all of her actions, the whole totality of the stop, and who she's with" led him to suspect her. For Norris's concerns to constitute reasonable suspicion that would justify a stop, he had to be able to point to specific and articulable facts, interpreted in the light of the existing circumstances and his experience, that defendant had committed a crime. *Ehly*, 317 Or at 80.

The things that Norris mentioned do not meet the *Ehly* test. As a practical matter, defendant's refusal to permit Norris to search her purse may have raised his suspicions, but as a legal matter it can play no role. A person's assertion of a constitutional right cannot support a reasonable suspicion of criminal activity. *See State v. Foland*, 224 Or App 649, 655, 199 P3d 362 (2008), *rev dismissed*, 348 Or 14 (2010). The remaining circumstances were that defendant had just left a motel that the police believed was involved in drug activity, was in a car with a person suspected of drug activity, and acted nervously when asked about her purse. In *State v. Berry*, 232 Or App 612, 222 P3d 758 (2009), *rev dismissed*, 348 Or 71 (2010), the defendant driver had made furtive movements, had pulled into the parking lot of a closed restaurant for a reason that the officer found improbable, was nervous, and had recently been at a restaurant that was associated with drug activity. We held that those things were insufficient to constitute reasonable suspicion. *Id.* at 617-18. The facts on which Norris relied are no stronger than the facts in *Berry*. They are not sufficient to provide an objective basis for a reasonable suspicion that defendant was engaged in criminal activity. As a result, the stop was illegal.

The final question is whether the evidence sought to be suppressed is sufficiently related to the unlawful stop. We conclude that a sufficient connection exists between the illegal stop and defendant's consent to the search of her purse, under the criteria that the Supreme Court established in *Hall*, 339 Or at 34-35, such that the discovery of the evidence

was the result of the stop. The trial court erred in denying defendant's motion to suppress.

Reversed and remanded.