Submitted August 30, reversed and remanded October 5, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TIMOTHY MARK BRAY,
*Defendant-Appellant.*

Klamath County Circuit Court
1400654CR; A158753

380 P3d 1245

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Haselton, Senior Judge.

**HASELTON, S. J.**

Defendant appeals a judgment of conviction of one count of unlawful possession of methamphetamine, ORS 475.894, and one count of felon in possession of a restricted weapon (FIP), ORS 166.270, entered after a stipulated facts trial. He assigns error to the denial of a motion to suppress evidence of both of those offenses discovered following a traffic stop. Specifically, defendant contends, *inter alia*, that the predicate traffic stop was extended by a request to check his criminal history and that that extension was unlawful as neither occurring during an "unavoidable lull" in the traffic stop nor justified by reasonable suspicion of criminal conduct. We agree with defendant's contention, and the state does not claim attenuation. Accordingly, we reverse and remand.

In reviewing the denial of a motion to suppress, we are "bound by the trial court's findings of historical fact that are supported by evidence in the record." *State v. Holdorf*, 355 Or 812, 814, 333 P3d 982 (2014). Consistently with that standard, the facts material to our review are as follows: At about 10:25 p.m. on the evening of March 25, 2014, Oregon State Police Sergeant Barden was on patrol. As he approached a trailer park where police had investigated "recent problems with methamphetamine distribution," Barden saw defendant's pickup truck stopped in the opposite lane of the street, directly in front of the entrance to the trailer park.[1] After passing defendant's truck, Barden turned his patrol car around so that he could speak with defendant, but, by the time he could do so, defendant had driven away, and Barden had to drive at "incredibly high speeds" to catch up. As Barden drew close, he saw defendant commit a traffic infraction; consequently Barden initiated a traffic stop.[2]

When Barden approached and spoke with defendant, defendant was "extremely nervous," with his hands "visibly shaking, * * * almost to the point it was tremors."

---

[1] Although defendant's truck was blocking the opposite lane, there was no other traffic.

[2] Barden did not stop defendant for speeding; when he overtook defendant's truck, defendant was driving at or below the speed limit.

However, defendant's speech was not "really fast" or "odd" in any other way.[3] To Barden, defendant's affect was "a sign of stimulant use, controlled substance." During their initial interaction, defendant also kept "frantically looking around" with a "panicked look on his face, as if [he was] concerned that there's something that I'm going to see," "looking around somewhere around his seat or down at his waistband." That conduct caused Barden to be concerned about the presence of weapons, and, when Barden looked at the same area where defendant was looking, he saw, partially hidden near the front of the truck's center console, a closed folding tactical knife, which, from his training, Barden believed to open centrifugally. Possession of such a knife, which Barden acknowledged as being of "extremely common design," is lawful, except by a felon. ORS 166.270(2).[4] On cross-examination during the suppression hearing, Barden acknowledged that, before contacting dispatch, he had no reason to believe that defendant was a convicted felon.

After obtaining defendant's driver's license, vehicle registration, and proof of insurance, Barden returned to his patrol car and contacted dispatch. In addition to requesting verification of defendant's driver's license and a check for outstanding warrants, which was his standard practice, Barden also asked dispatch to run a check for defendant's criminal history, if any, including, specifically, with respect to possession or distribution of controlled substances. Barden asked for a criminal history check because, as he explained during the suppression hearing:

> "That was based on where he came from [*viz.*, the location in front of the trailer park]. The time of night. The fact

---

[3] The trial court so characterized defendant's speech, based on its review of a recording of the interaction. *See* 281 Or App at 441. In doing so, the court rejected Barden's description of defendant's speech as "very fast paced and erratic" and "audibly terrified almost, and high pitched."

[4] ORS 166.270(2) provides:

"Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns or has in the person's possession or under the person's custody or control any instrument or weapon having a blade that projects or swings into position by force of a spring or by centrifugal force * * *, commits the crime of felon in possession of a restricted weapon."

that he was actually stopped in front of the trailer park. The fact that * * * I had to go at incredibly high speeds to catch up with him. And the fact that he was extremely nervous. His very fast pace[d] speech and that he was frantically looking around * * * where he was seated."[5]

Before receiving a response from dispatch, Barden returned to defendant and asked him why he had stopped on the road in front of the trailer park. Defendant's nervousness and trembling increased, and, although he answered Barden's questions, some aspects of his responses were conflicting.

Dispatch subsequently informed Barden that defendant's driver's license was valid and that he had no outstanding warrants, but that defendant had "a positive criminal history, including for felony controlled substances."[6] In the light of that information, and given the knife in defendant's truck, Barden believed that defendant had violated ORS 166.270(2). Barden did not, however, pursue inquiries about the knife or arrest defendant at that point. Instead, he asked defendant questions about methamphetamine use—and defendant, while acknowledging that he had used methamphetamine in the distant past, denied that he had done so in recent years. Barden also sought, and defendant refused, consent to search the truck.

After defendant refused consent to search, Barden, on the basis of his belief that defendant had violated ORS 166.270(2), directed him to get out of the truck. Defendant did so and consented to a patdown for weapons. However, when Barden reached defendant's left-side pants pocket, defendant turned his body away. Barden then told defendant that he believed that there was methamphetamine in defendant's pocket, and defendant "tensed up his entire body" and said, "Um." Barden immediately handcuffed defendant and advised him of his *Miranda* rights. In response to Barden's

---

[5] As noted, 281 Or App at 437 n 3, the trial court explicitly rejected Barden's characterization of the pace and quality of defendant's speech.

[6] Barden testified that that description signified criminal convictions, because "[dispatch will] only give me that if it's convictions; they won't give me arrests."

subsequent questions, defendant acknowledged that he had methamphetamine in his pocket, and Barden removed two containers from defendant's pocket, at least one of which contained methamphetamine. Defendant also told Barden that his "knife collection" was in the truck.

Defendant was, consequently, charged with one count of FIP, ORS 166.270(2), and one count of unlawful possession of methamphetamine, ORS 475.894. Defendant moved to suppress evidence, including the folding knife, the methamphetamine, and his inculpatory statements, arguing that that evidence had been obtained as a result of an unlawful extension of the traffic stop. Specifically, invoking *State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010), defendant contended that (1) Barden had extended the traffic stop by requesting the criminal history check and also by asking defendant about his methamphetamine use; (2) neither of those extensions was lawful as having occurred during an "unavoidable lull" or as justified by reasonable suspicion of criminal conduct; and (3) either of those unlawful extensions compelled suppression.

The state's sole response, predicated on *Holdorf*, was that both the request for the criminal history check and the inquiries about defendant's methamphetamine use were independently and sufficiently justified by reasonable suspicion. Significantly for our analysis that follows, the state did not advance any of three other, alternative contentions before the trial court.

*First*, the state did not contend that the request to check defendant's criminal history—in addition to the check to verify defendant's identification and for outstanding warrants—was insufficient to effect a cognizable temporal extension of the traffic stop. To the contrary, at the suppression hearing, the prosecutor explicitly disavowed any such contention. Specifically, when the trial court suggested that it did not "see how it's an extension of the stop to ask if somebody's got a felony conviction," the prosecutor responded, "I'm not making that argument, Your Honor." And, when the court asked why the state was not so arguing, the prosecutor answered, "because it takes * * * three seconds to ask

the question [to check for criminal history]. It also causes dispatch to look for the information."[7]

*Second,* the state did not assert that, in the totality of the circumstances, the request to check defendant's criminal history, if any, was independently justified, as a reasonable officer safety measure. *See generally State v. Jimenez,* 357 Or 417, 426-30, 353 P3d 1227 (2015) (addressing when officer may lawfully inquire about presence of weapons during course of traffic stop); *cf. State v. Miller,* 277 Or App 147, 370 P3d 882 (2016) (where officer lawfully learned during course of traffic stop that the defendant had a valid concealed handgun permit, officer's subsequent inquiry of the defendant as to whether he had any firearms with him was not justified, under totality of circumstances, as a permissible officer safety measure and, thus, unlawfully extended traffic stop).

*Third,* and finally, the state did not contend that, regardless of any purported unlawful extension, the motion to suppress should nevertheless be denied because the discovery of the disputed evidence was sufficiently attenuated from any such extension. *See, e.g., State v. Bailey,* 356 Or 486, 508, 338 P3d 702 (2014) (noting that, under the Fourth Amendment, the state bears the "burden to establish attenuation" and identifying factors pertaining to assessment of attenuation); *State v. Jones (A154424),* 275 Or App 771, 775, 365 P3d 679 (2015) ("[W]hether we are evaluating attenuation under Article I, section 9, or the Fourth Amendment, we consider essentially the same factors to determine

---

[7] Consequently, the state does not advance such a contention for purposes of this appeal. Although the state's brief notes that the state is of the view that, as a general matter, requesting a check on a driver's criminal history does not effect an unlawful extension so long as it does not significantly delay the issuance of the traffic citation,

"in light of the prosecutor's comment, the state assumes—for purposes of this appeal only—that a request for criminal history is not reasonably related to the processing of the traffic infraction, such that it must be independently supported by reasonable suspicion or occur during an unavoidable lull."

*Accord State v. Leino,* 248 Or App 121, 128, 273 P3d 228, *rev den,* 352 Or 76 (2012) (where officer, in course of traffic stop, requested a "records check" (to verify identification) and a "warrants check," and nothing in the record established that the latter extended the stop beyond time expended in completing the former, court had "no occasion to decide whether a warrant check that significantly delays the issuance of a citation would impermissibly extend a lawful traffic stop").

whether the state has met its burden to demonstrate attenuation.").

The trial court denied the motion to suppress, reasoning:

> "I don't think that you could find very many guys in Klamath County that don't carry a knife like that. I mean, I don't think there's really anything unusual about that knife. That's a knife that is common for people to carry around with them.
>
> "And I didn't think he was talking really fast. That didn't strike me as odd speech pattern at all. I've heard lots worse. So I didn't see that.
>
> *"But I think it's perfectly okay once you see the knife to check and see if the person is a convicted felon."*

(Emphasis added.) Thus, the trial court, in denying the motion to suppress, did not determine that, at the time Barden requested the criminal history check, he had reasonable suspicion that defendant had engaged in unlawful criminal activity pertaining to controlled substances, which additional information from a criminal history check might tend to corroborate. *Cf. State v. Huffman*, 274 Or App 308, 314, 360 P3d 707 (2015), *rev den*, 358 Or 550 (2016) ("Evidence of a person's past drug use alone is not sufficient support for reasonable suspicion, but it can be considered in the totality of the circumstances."). Rather, the court simply determined that, given the totality of the circumstances, including the presence of the knife, the request to check defendant's criminal history, if any, was legally justified.

A stipulated facts trial ensued, and defendant appeals the consequent judgment of conviction on one count of FIP and one count of unlawful possession of methamphetamine.

On appeal, the parties reprise their contentions before the trial court. Defendant reiterates that *either* (a) the request for the criminal history check *or* (b) the subsequent inquiries about defendant's use of methamphetamine unlawfully extended the traffic stop so as to compel suppression. The state's sole response, as before the trial court, is that reasonable suspicion justified any extension;

the state does not assert any officer safety justification, and exploitation is not disputed.[8] For the reasons that follow, we agree with defendant that the request to check his criminal history was not justified by reasonable suspicion of criminal conduct and, consequently, effected an unlawful extension of the traffic stop. Accordingly, suppression is required.[9]

In *State v. Kimmons*, 271 Or App 592, 352 P3d 68 (2015), we summarized the legal principles governing the lawfulness of temporal extension of traffic stops:

> "'Seizures or searches for evidence to be used in a criminal prosecution, conducted without a warrant or without an exception to the warrant requirement, violate Article I, section 9[.]' *Rodgers/Kirkeby*, 347 Or at 623. A temporary restraint of a person's liberty for the purpose of criminal investigation—*viz.*, a stop—qualifies as a seizure, and, therefore, must be justified by a reasonable suspicion of criminal activity. * * * For that reason, police may not unreasonably delay, or extend the duration, of an otherwise lawful stop to investigate unrelated matters for which they lack reasonable suspicion, [*id.*] at 621-24, but investigations into unrelated matters that occur during an 'unavoidable lull' are permissible."

*Id.* at 600-01 (some citations omitted); *see also State v. Barber*, 279 Or App 84, 89, 379 P3d 651 (2016) ("To be lawful, an extension of a traffic stop to conduct a criminal investigation must be justified by reasonable suspicion of criminal activity.").

Here, as noted, the only disputed issue is whether the extension of the traffic stop resulting from the request for the criminal history check was justified by reasonable

---

[8] *Accord State v. Kimmons*, 271 Or App 592, 600, 352 P3d 68 (2015) (in addressing lawfulness of extension of stop, declining to review officer safety-based alternative basis for affirmance raised for first time on appeal, because, if that contention had been raised before the trial court, the record "might well have developed differently"); *State v. Keller*, 280 Or App 249, 257-58, 380 P3d 1144 (2016) (declining, for the same reason, to consider state's "lack of exploitation" alternative basis for affirmance raised for first time on appeal); *State v. Booth*, 272 Or App 192, 199-200, 355 P3d 181 (2015) (same).

[9] Given our analysis and disposition, we need not, and do not, address defendant's alternative, and at least ostensibly independent, contention that, regardless of the criminal history check, Barden's subsequent inquiries about defendant's methamphetamine use unlawfully extended the stop.

suspicion of criminal activity. A stop, or extension of a stop, is supported by reasonable suspicion

> "when the officer subjectively believes that the person has committed or is about to commit a crime and that belief is objectively reasonable in light of the totality of the circumstances existing at the time of the stop. To be objectively reasonable, the officer's suspicion must be based on specific and articulable facts."

*State v. Maciel*, 254 Or App 530, 535, 295 P3d 145 (2013) (citations omitted).

In this case, as described above, the trial court predicated its denial of suppression on the presence of the knife in defendant's truck: "I think it's perfectly okay once you see the knife to check and see if the person is a convicted felon." Further, in doing so, the court explicitly rejected Barden's characterization of the mode of defendant's speech (*i.e.*, its pace and quality) that Barden had characterized as being indicative of the use of controlled substance stimulants. *See* 281 Or App at 436-37, 441. Thus, it appears that the trial court determined that the totality of the circumstances substantiated reasonable suspicion that defendant was a convicted felon and, given the presence of the knife, had committed FIP—and that, consequently, the request for the criminal history check was lawful as relating to an investigation, supported by reasonable suspicion, of that crime.

We do not understand the state to offer any defense of that rationale for denial of suppression—*viz.*, that the totality of the circumstances before Barden contacted dispatch established reasonable suspicion that defendant was a convicted felon. Indeed, that proposition was flatly contradicted by Barden's own admission that, when he contacted dispatch, he had no reason to believe that defendant was a convicted felon, *see* 281 Or App at 437, and the circumstances of the encounter were insufficient to support a non-speculative inference of felon status.[10] Consequently, that rationale was, and is, unavailing.

---

[10] *Cf. State v. Ehly*, 317 Or 66, 80-81, 854 P2d 421 (1993) (addressing functionally obverse circumstance in which officer knew that the defendant was a convicted felon and issue was whether circumstances supported reasonable belief that gym bag into which the defendant was reaching contained a firearm and, thus, substantiated reasonable suspicion of FIP).

The state contends, nevertheless, that suppression was correctly denied, because the totality of the circumstances substantiated reasonable suspicion that defendant was engaged in some other (unspecified) type of criminal activity. Here, the only even colorable referent for such suspicion would relate to possession or distribution of controlled substances. Defendant remonstrates, and we agree, that, on this record and given the trial court's findings, the totality of the circumstances as of the time Barden contacted dispatch did not substantiate reasonable suspicion of defendant's participation in such crimes.

*State v. Rutledge*, 243 Or App 603, 260 P3d 532 (2011), which defendant invokes, is illustrative. In *Rutledge*, officers stopped a car in which the defendant was a passenger at 2:00 a.m., just as it left a motel that "had a reputation for narcotics activity." *Id.* at 605. The driver was someone who the officers suspected was "involved with narcotics." *Id.* Although the stop was for a traffic violation, the officers asked for, and received, the driver's consent to search the car. *Id.* During the search, an officer found a purse on the floor below the front passenger's side seat, and, when he asked the defendant if he could search it, she "acted nervously" and refused consent. *Id.* at 606, 610. The officer then asked questions about the contents of the purse, and the defendant made inculpatory admissions. *Id.* at 606. The defendant moved to suppress, arguing, in part, that the officer's questioning about the purse's contents had effectuated an unlawful stop, and the trial court denied that motion. *Id.*

On appeal, we reversed and remanded, holding that the officer's questions, while he retained the defendant's purse, constituted a stop that was unsupported by reasonable suspicion. *Id.* at 608-10. Specifically, we held that the combination of the defendant's departure from a site "involved in drug activity," her companion's suspected involvement in drug activity, and her nervousness during the encounter was insufficient to establish reasonable suspicion. *Id.* at 610.[11]

---

[11] *See also State v. Berry*, 232 Or App 612, 615, 618, 222 P3d 758 (2009), *rev dismissed*, 348 Or 71 (2010) (concluding that officer lacked reasonable

*State v. Bertsch*, 251 Or App 128, 284 P3d 502 (2012), is similar. There, after a sheriff's deputy received a tip from a "reliable informant" that drugs were being sold out of two apartments, the apartments were placed under surveillance. *Id.* at 130. Officers saw the defendant enter one of the apartments with a person "associated with drug users and dealers," and the two left a short time later, driving away in the defendant's car. *Id.* Officers subsequently made a lawful traffic stop, and, after determining that the defendant had a suspended driver's license, one officer told her that the apartment was "associated with drug use and drug trafficking" and sought, and obtained, her consent to search the car. *Id.* at 131-32. At the time the officer requested consent, he knew that the defendant "had recently completed probation for a drug offense" and, based on his training and experience, "subjects who are just off probation for a controlled substance offense * * * will continue to use controlled substances." *Id.* at 133-34. That search yielded inculpatory evidence, which the defendant moved to suppress, arguing that the request for consent to search was unsupported by reasonable suspicion and, thus, unlawfully extended the traffic stop. *Id.* at 132.

The trial court denied suppression, and, on appeal from the consequent conditional guilty plea, we reversed and remanded. *Id.* at 132, 138. In so holding, we emphasized that "[w]e have repeatedly said that a person's presence in a location associated with drug activity is insufficient to support an objectively reasonable belief that that person is himself or herself engaged in drug activity" and that "it is not reasonable to conclude that a person is involved in drug crimes because he or she is in the company of a known drug user or dealer." *Id.* at 134. Finally, we characterized the "objective value" of the defendant's probationary status as "minimal" in the reasonable suspicion calculus. *Id.* at 135. Accordingly, we concluded that the totality of the circumstances did not

---

suspicion of illegal drug activity where the defendant was stopped for traffic violation at 2:30 a.m. after leaving a restaurant with a "higher frequency of drug activity," had engaged in "furtive movements" after officer had activated patrol car's overhead lights, exhibited nervousness during encounter, and gave "improbab[le]" reason for pulling into deserted parking lot before being stopped).

substantiate reasonable suspicion of involvement in criminal drug activity. *Id.*[12]

Here, the circumstances pertaining to putative reasonable suspicion of involvement in criminal drug activity are, in many ways, even weaker than those in *Rutledge* or *Bertsch*. Unlike in either of those cases, there was no evidence that defendant ever actually entered the venue (the trailer park) associated with drug activity; rather his car was on the street outside the entrance to the trailer park. Nor, as in those cases, was defendant in the company of someone suspected of drug activity; he was alone.[13] Finally, unlike in *Bertsch*, at the time that Barden contacted dispatch, he had no information that defendant had ever been convicted of a controlled substance offense.[14]

Rather, the only circumstances here arguably militating towards a determination of reasonable suspicion are defendant's presence in the vicinity of the trailer park, his extreme nervousness in his interactions with Barden, his mode of speech, which Barden described as a "sign" of the use of stimulants, and his departure from the road in front of the trailer park after Barden had driven by in the opposite direction. Those circumstances were insufficient collectively to establish reasonable suspicion.

Ostensibly the strongest of those circumstances in context is Barden's description of defendant's manner of

---

[12] *Accord Barber*, 279 Or App at 94 (distinguishing *Bertsch* on grounds that, after leaving suspected drug venue, "the defendant and his companion had sat in the car and engaged in what the detectives identified as possible drug activity" and that, after officer turned on overhead lights to initiate traffic stop, the defendant and his companion had engaged in conduct "suggesting that [the] defendant and the passenger had something in the car that they did not want [the officer] to see").

[13] *Cf. State v. Clink*, 270 Or App 646, 651-52, 348 P3d 1187, *rev den*, 358 Or 69 (2015) (where named informant reported that "a couple of guys" were "smoking something" in a vehicle, officer's knowledge that the defendant's "passenger [was] a methamphetamine user, and his knowledge that people can use methamphetamine by smoking it" contributed to reasonable suspicion).

[14] *Cf. State v. Huffman*, 274 Or App 308, 314-15, 360 P3d 707 (2015), *rev den*, 358 Or 550 (2016) (fact that the defendant was on probation for possession of heroin contributed to determination of reasonable suspicion that the defendant was in possession of a controlled substance); *State v. McHaffie*, 271 Or App 379, 387, 350 P3d 600 (2015) (so concluding, in totality of circumstances, with respect to the defendant's "past association with methamphetamine").

speech as indicative of the use of controlled substance stimulants. *See, e.g., Holdorf,* 355 Or at 829-30 (officer's training and experience-based representation that "he had observed a distinctive behavior associated with methamphetamine use that is popularly referred to as 'tweaking' and that, in his opinion, defendant was tweaking" held to materially substantiate reasonable suspicion of unlawful possession of methamphetamine); *State v. McHaffie,* 271 Or App 379, 381, 386-87, 350 P3d 600 (2015) (concluding that the defendant's conduct in "repeatedly touching and reaching inside his right pants pocket" contributed to reasonable suspicion, because officer's experience corroborated that person's in unlawful possession of drugs often engage in such "indexing" behavior). The difficulty here, however, is that Barden's brief and unelaborated reference to a "sign" of controlled substance use, *see* 281 Or App at 436-37,[15] was premised on his characterization of defendant's mode of speech—which, again, the trial court explicitly contradicted in its findings, based on its review of the recording of the encounter. Consequently, Barden's testimony in that regard does not substantiate reasonable suspicion.

The remaining circumstances are insufficient. Given our precedents' frankly skeptical estimation of the significance of entry into a suspected drug venue, merely being in the vicinity contributes little, if anything, to the reasonable suspicion calculus. Similarly, "nervousness alone is entitled to little weight when evaluating reasonable suspicion." *Huffman,* 274 Or App at 314. Finally, although defendant's departure from the vicinity of the trailer park after Barden drove by might be concerning, there is no evidence that once Barden initiated the traffic stop, defendant was, in any way, noncompliant or engaged in furtive movements. *Compare, e.g., Barber,* 279 Or App at 94 (the defendant's and his passenger's conduct after initiation of stop indicated that they "had something in the car that they did not want [the officer] to see"); *Huffman,* 274 Or App at 309-10 (after the defendant pulled over, he, "without prompting," "immediately left [his] car and began walking toward the patrol

---

[15] Barden's testimony in that respect was limited to that single reference and, thus, was far less particularized and nuanced than the officers' testimony in either *Holdorf,* 355 Or at 825-28, or *McHaffie,* 271 Or App at 381.

car" and thereafter did not comply with officer's direction to keep his hands on the steering wheel but, instead, "made furtive movements with his hands towards the front pocket of his sweatshirt"); *State v. Clink*, 270 Or App 646, 652-53, 348 P3d 1187, *rev den*, 358 Or 69 (2015) (the defendant's "elaborate," "deliberate," and "furtive" movements after he "spotted" the officer suggested that he was concealing a "large hard object," possibly a firearm).

In sum, the request to check defendant's criminal history, if any, was not justified by reasonable suspicion of criminal activity. Accordingly, on this record, that request unlawfully extended the traffic stop and resulted in the discovery of the disputed evidence. Thus, the trial court erred in denying suppression.

Reversed and remanded.