Argued and submitted December 23, 2014, affirmed October 14, 2015, petition for review denied February 4, 2016 (358 Or 550)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RAYMOND WILLIAM HUFFMAN,
*Defendant-Appellant.*

Marion County Circuit Court
12C41064; A153986

360 P3d 707

John Evans, Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Alice Newlin, Deputy Public Defender, Office of Public Defense Services.

Michael S. Shin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Defendant appeals a judgment of conviction for unlawful delivery of heroin. ORS 475.850. He assigns error to the trial court's denial of his motion to suppress evidence discovered as a result of inquiries made by a sheriff's deputy during a traffic stop. He asserts that the trial court erred in denying his motion to suppress because those inquiries unlawfully extended the traffic stop, resulting in a seizure without reasonable suspicion of a crime in violation of Article I, section 9, of the Oregon Constitution.[1] On review for errors of law, *State v. Holdorf*, 355 Or 812, 814, 333 P3d 982 (2014), we conclude that the officer had reasonable suspicion and therefore affirm.

"In reviewing a denial of a motion to suppress, we are bound by the trial court's findings of historical fact that are supported by evidence in the record." *Id.* at 814. To the extent that the trial court did not make explicit findings of fact, where there are facts that could be decided in more than one way, we presume that the court made factual findings consistent with its ultimate conclusion. *Id.* We state the facts in accordance with those standards.

While Bell, a deputy with the Marion County Sheriff's Office, was on patrol of a high drug-activity area and in a marked patrol car, he observed a car driving with a cracked front windshield, no front license plate, and a nonworking tail light. Bell initiated a traffic stop and defendant, who was driving the car, pulled it over to the side of the road, immediately left the car, and began walking toward the patrol car. According to Bell, in his training and experience, a person who leaves a car without prompting during a traffic stop is often either trying to hide something by diverting attention away from the car or attempting to flee. Bell had been a law enforcement officer for 14 years and had conducted hundreds of drug investigations. He had also completed formal training courses on investigating drug-related crime, including training in how to identify drugs, how suspects

---

[1] Article I, section 9, provides, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

attempt to conceal drugs, and how to determine if someone is under the influence of drugs.

Bell quickly got out of his patrol car and instructed defendant to get back in his car. Defendant complied. Defendant appeared very nervous; he was visibly shaking and did not make eye contact with Bell. Defendant informed Bell that the driver's side window would not roll down and, for the remainder of the stop, defendant sat in the driver's seat with the door open, while Bell stood inside the door to interview defendant.

Bell directed defendant to keep his hands on the steering wheel for safety reasons and to prevent defendant from destroying evidence. Throughout the stop, however, defendant was fidgety, and he made furtive movements with his hands towards the front pocket of his sweatshirt. Each time defendant moved his hands towards his pocket, Bell instructed him to place them back on the steering wheel.

Bell asked defendant for his driver's license and proof of insurance. Defendant responded that he did not have insurance and that his license was suspended, but gave Bell his name and date of birth. Without returning to his patrol car, Bell communicated the identification information to dispatch. The dispatcher reported that defendant's license was suspended and that he was on probation for possession of heroin. Because defendant's license was suspended, Bell ordered a "non-preference tow per our policy."

Instead of completing the traffic citation, at that point, Bell continued to interview defendant. Bell testified that he "believed there was something else going on with [defendant] having to grab to the sweatshirt," and he wanted to question him about that behavior. He believed that he had reasonable suspicion of "crime, maybe drugs, criminal activity."

Bell first asked defendant if there was anything illegal in his car, and defendant replied that there was not. Bell then asked defendant for consent to search the car, and defendant consented. Bell next asked defendant if he had anything illegal on his person. Defendant looked down and did not answer the question.

Bell continued to question defendant, and defendant eventually admitted that he had heroin and a syringe in his sweatshirt pocket. Defendant then consented to a search of his pocket, and Bell seized the evidence, ordered defendant to leave the car, and placed him under arrest. The entire traffic stop lasted two to three minutes. Defendant was subsequently charged with possession of heroin and unlawful delivery of heroin.

Defendant filed a pretrial motion to suppress the heroin. In support of his motion, he argued that Bell unlawfully extended the traffic stop, in violation of Article I, section 9, by questioning him about whether he had anything illegal in his car or on his person. According to defendant, those questions exceeded the scope of the traffic stop and amounted to a seizure without reasonable suspicion of criminal activity.

The state argued that Bell properly extended the traffic stop because he had developed a reasonable suspicion that defendant was engaged in drug-related criminal activity. In any event, according to the state, Bell did not extend the traffic stop because he asked the questions during an "unavoidable lull" created by the wait for the tow truck.

The trial court denied defendant's motion to suppress, concluding that Bell "lawfully expanded the stop based on reasonable suspicion to investigate a drug crime." After a trial to the court, defendant was convicted of delivery of a controlled substance.

On appeal, defendant reiterates the arguments he made before the trial court. As we explain below, we conclude that Bell reasonably suspected that defendant was committing a drug-related crime when he questioned defendant about whether he had anything illegal in his possession. Therefore, any extension of the traffic stop was justified by that reasonable suspicion.[2] Accordingly, the trial court properly denied defendant's motion to suppress.

---

[2] Because we conclude that any extension was supported by reasonable suspicion, we do not address whether Bell's questioning extended the stop. Instead, we assume, without deciding, that the stop was extended.

A stop is a seizure involving "temporary restraint of a person's liberty for the purpose of criminal investigation * * * and must be justified by a reasonable suspicion of criminal activity." *State v. Rodgers/Kirkeby*, 347 Or 610, 621, 227 P3d 695 (2010). An individual may also be stopped for the purpose of investigating a noncriminal traffic violation.[3] *Id.* at 624. A law enforcement officer may not "extend the duration of a traffic stop by inquiring into unrelated matters" but may inquire into unrelated matters "during an unavoidable lull" in the processing of a traffic stop. *State v. Dennis*, 250 Or App 732, 740, 282 P3d 955 (2012). A traffic stop may only be extended to investigate unrelated criminal conduct if the officer reasonably suspects that the person stopped has committed a crime or poses a threat to the officer's safety. *State v. Steffens*, 250 Or App 742, 747-48, 282 P3d 888 (2012). Reasonable suspicion of criminal activity exists if the officer subjectively suspects that an individual has committed, or is about to commit, a crime, and that belief is "objectively reasonable under the totality of the circumstances." *State v. Ehly*, 317 Or 66, 79, 854 P3d 421 (1993).

Defendant suggests that Bell did not subjectively believe that defendant was engaged in criminal activity. Although the trial court made no express factual findings on this issue, we presume the trial court implicitly found that Bell subjectively believed defendant was committing a crime because that finding is necessary to its ultimate conclusion—that Bell had reasonable suspicion that defendant was engaged in drug crime. Accordingly, we are bound by the trial court's implicit factual finding because there is evidence in the record to support it. Bell testified that he suspected defendant was engaged in "crime, maybe drugs[.]" The issue, then, is whether Bell's suspicion was objectively reasonable.

An officer's suspicion is objectively reasonable if the "officer is able to point to specific and articulable facts that a person has committed a crime or is about to commit a crime[.]" *Holdorf*, 355 Or at 823. In determining whether an officer had reasonable suspicion, the officer's "training and

---

[3] A stop for the purpose of investigating a noncriminal traffic violation must be based on probable cause that the violation occurred. ORS 810.410(2), (3).

experience may, depending on the factual circumstances, * * * be given appropriate weight." *Id.* at 829. We evaluate that issue in light of the facts known to Bell at the time of the extension of the stop.

Here, the specific articulable facts known to Bell at the time he began questioning defendant about matters unrelated to the traffic stop were that (1) defendant was driving in a high drug-activity area; (2) defendant left the car immediately after it was stopped; (3) defendant was nervous, visibly shaking, and would not maintain eye contact with Bell; (4) defendant was on probation for possession of heroin; and (5) defendant would not keep his hands on the steering wheel when requested by the officer and repeatedly made furtive movements towards his sweatshirt pocket. As explained below, we conclude that those circumstances, considered together, gave rise to reasonable suspicion that defendant possessed a controlled substance.

Bell stopped defendant in an area Bell associated with a high level of drug activity. To be sure, a person's presence in a high drug-activity area in itself is not adequate to give rise to reasonable suspicion, *State v. Bertsch,* 251 Or App 128, 134, 284 P3d 502 (2012), but it is, nevertheless, relevant to a determination of reasonable suspicion of a drug-related crime, *cf. State v. Martin,* 327 Or 17, 22, 956 P2d 956 (1998) (considering the defendant's presence in a "drive-up drug dispensing location," along with other conduct consistent with drug dealing, and concluding that the officer had probable cause to arrest the defendant).

Defendant left the car and approached Bell's patrol car immediately after the stop. Based on Bell's training and experience, that conduct was unusual and often meant that a suspect was trying to distract him from something in the car or flee the scene. *See State v. McHaffie,* 271 Or App 379, 386-87, 350 P3d 600 (2015) (explaining that the defendant's immediate exit from his vehicle during a traffic stop weighed in favor of reasonable suspicion because, in the officer's training and experience, "that behavior is unusual and is frequently done in an attempt by individuals to distance themselves from contraband inside a vehicle").

Defendant claims that he got out of the car to inform Bell that his front window would not roll down. Defendant fails to explain why opening the door and awaiting developments would not provide that same opportunity to comment. That said, even conduct with a potentially innocent explanation can contribute to reasonable suspicion. *State v. Villemeyer*, 227 Or App 193, 198, 205 P3d 49 (2009); *see also State v. Frias,* 229 Or App 60, 66, 210 P3d 914 (2009) ("[A] police officer's experience can cast a different light on seemingly innocent circumstances[.]"). Bell, based on his training and experience, believed that defendant's conduct was indicative of criminal activity. Bell had 14 years of experience investigating drug crimes and had specific training in how suspects attempt to conceal contraband. Accordingly, despite a possible alternative explanation, defendant's immediate exit from the car contributes to reasonable suspicion of criminal activity.

Further, defendant appeared to be extremely nervous; his hands were visibly shaking and he would not make eye contact with Bell. Although nervousness alone is entitled to little weight when evaluating reasonable suspicion, *see State v. Berry*, 232 Or App 612, 618, 222 P3d 758 (2009), *rev dismissed*, 348 Or 71 (2010) (stating that "there is nothing inherently suspicious about * * * being nervous when pulled over by a police officer"), here defendant's distracting conduct in leaving the car provided Bell with an indication of *why* he might be nervous—that he was trying to hide something. *See Holdorf,* 355 Or at 829 (the defendant's nervous and fidgety demeanor weighed in favor of reasonable suspicion because the officer was able to explain, based on his training and experience, that the defendant's demeanor was consistent with methamphetamine intoxication). Bell knew that defendant's initial exit from his car was consistent with attempting to hide something, making defendant's nervous demeanor more significant in the calculation of reasonable suspicion.

Defendant was also on probation for possession of heroin. Evidence of a person's past drug use alone is not sufficient support for reasonable suspicion, but it can be considered in the totality of the circumstances. *See, e.g., Ehly,* 317 Or at 80 (considering the defendant's "prior felony

convictions" and the fact that the officers "knew [the defendant] to be a methamphetamine user" as part of the totality of the circumstances giving rise to reasonable suspicion); *McHaffie*, 271 Or App at 387 (concluding that the defendant's "past association with methamphetamine," along with other factors, contributed to the officer's reasonable suspicion that the defendant was in possession of contraband); *Frias*, 229 Or App at 65 ("[P]ast drug use, without more, does not make it reasonable to suspect that a current drug crime has occurred or is imminent.").

Finally, defendant made furtive movements towards his sweatshirt pocket and was unable to keep his hands on his steering wheel, leading Bell to suspect that he had something in his pocket. *Cf. McHaffie*, 271 Or App at 386-87 (concluding that the defendant's conduct in "repeatedly touching and reaching inside his right pants pocket" contributed to reasonable suspicion because the officer's experience led him to believe that people in possession of illegal drugs often engage in similar "indexing" behavior (internal quotation marks omitted)). Defendant's failure to keep his hands away from his pocket contributes to our conclusion that Bell had reasonable suspicion of criminal activity in this case.

Taken together, defendant's presence in a high drug-activity area, his immediate exit from his vehicle, his nervous demeanor, his probation status, and the furtive movements he made towards his sweatshirt pocket were sufficient to give rise to reasonable suspicion that defendant was in possession of a controlled substance. Although individually none of the factors in this case would give rise to reasonable suspicion, collectively they do. Because Bell developed reasonable suspicion that defendant was committing a crime, any extension of the traffic stop was lawful, and the trial court did not err when it denied defendant's motion to suppress.

Affirmed.