Argued and submitted September 19, reversed and remanded
November 30, 2016, petition for review denied May 11, 2017 (361 Or 486)

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## WESLEY LEWIS WESTCOTT,
*Defendant-Respondent.*

Deschutes County Circuit Court
15FE0185; A159548

385 P3d 1268

Peenesh H. Shah, Assistant Attorney General, argued the cause for appellant. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Andrew D. Robinson, Deputy Public Defender, argued the cause for respondent. With him on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Before Egan, Presiding Judge, and Lagesen, Judge, and Schuman, Senior Judge.

## SCHUMAN, S. J.

Police in Redmond stopped defendant for a traffic violation and then extended the stop to conduct an investigation into whether defendant was in possession of contraband. The investigation led to the discovery of methamphetamine and defendant's subsequent arrest and indictment. At a pretrial hearing, defendant filed a motion to suppress all of the evidence seized by the police during the extension of the stop, arguing that it amounted to detaining him without reasonable suspicion that he was involved in criminal activity, contrary to Article I, section 9, of the Oregon Constitution.[1] The trial court agreed and granted defendant's motion. The state appeals. *See* ORS 138.060(1)(c) (providing that the state may appeal "[a]n order made prior to trial suppressing evidence[.]"). We reverse.

The following facts are undisputed. Redmond police received a report from a resident that drug activity was occurring at a nearby house. The person who made that report identified himself as a former methamphetamine user who was familiar with drug transactions and how they occurred. Based on that report, the reliability of which is not at issue, the police arrested the house's owner and stopped three automobiles that had made short visits there. The owner acknowledged that drug transactions occurred in his house, and the occupants of the three stopped cars were found to be in possession of methamphetamine. Police also stopped a fourth car leaving the house. Its occupant was the owner's daughter, and police found no drugs on her or in her car.

The police decided to apply for a warrant to search the house and, while they were waiting for a judge to sign one, they parked near the house to monitor activity there. During a one-hour period, they saw defendant's car arrive and leave two times. Each time, defendant and a passenger parked behind the house, entered, stayed for approximately 10 minutes, and then drove away. After defendant's car left the house for a third time, showing the same pattern as on

[1] Article I, section 9, of the Oregon Constitution provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

the previous visits, the officers developed a suspicion that the car's occupants were holding drugs. The officers decided to follow the car until its driver committed a traffic violation so that they could stop it and ask the occupants for consent to search—a classic, but not unlawful, pretext stop. *See State v. Carter/Dawson*, 287 Or 479, 485, 600 P2d 873 (1979) ("[An] officer's motives for an otherwise justifiable traffic stop are * * * not relevant to the question of its validity."); *accord State v. De La Rosa*, 228 Or App 666, 671, 208 P3d 1012 (2009). Defendant was driving, and the officers recognized him and his passenger as people known to be involved with illegal drugs.

Defendant did not appear to be under the influence of methamphetamine, but the officers testified that he was unusually nervous compared to drivers in other traffic stops. He was visibly shaking, had trouble speaking, and at one point placed a cigarette in his mouth backwards. When an officer asked defendant if he was all right, he explained that he was tired of being harassed by the police. The officers asked for consent to search the car; when defendant refused, the officers called for a canine drug-detection team. At this point, at the latest, the officers' actions relevant to the traffic violation ended and the encounter became a drug-related investigation. The dog arrived roughly a half hour later and alerted to the presence of drugs. The officers then searched defendant and discovered methamphetamine. He was arrested and charged with possession and delivery of that drug. *See* ORS 475.894 (possession); ORS 475.890(1) (delivery). Before trial, defendant moved to suppress the methamphetamine, arguing that the officers unlawfully extended the traffic stop without reasonable suspicion of a criminal offense. The trial court granted the motion, and the state now appeals.

The parties do not dispute that the initial stop, based on a traffic violation, was legal. The only question before us is whether the facts, as known to the officers at the time they extended the traffic stop to investigate the drug offense, amounted to reasonable suspicion that a crime had been committed. That is a legal question that we review for legal error. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

Under Article I, section 9, officers may "stop and briefly detain motorists for investigation of noncriminal traffic violations." *State v. Rodgers/Kirkeby*, 347 Or 610, 624, 227 P3d 695 (2010). However, if, during a traffic stop, officers extend the encounter by beginning to investigate another crime, Article I, section 9, requires that they have reasonable suspicion that the motorist has committed, is committing, or is about to commit that crime. *See State v. Rodgers*, 219 Or App 366, 372-73, 182 P3d 209 (2008), *aff'd sub nom Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010). The state "has the burden of establishing that an officer had both subjective and objective reasonable suspicion." *State v. Guest*, 207 Or App 395, 399, 142 P3d 482 (2006). It is undisputed that the officers here had a subjective suspicion of criminal activity. For that suspicion to be objectively reasonable, it had to be based on specific and articulable facts that, under the totality of the circumstances, indicated defendant's involvement in criminal activity. *State v. Holdorf*, 355 Or 812, 823, 333 P3d 982 (2014). Reasonable suspicion is a "relatively low barrier," less demanding than probable cause; it does not require "[c]ertainty about the significance of particular facts." *State v. Jones*, 245 Or App 186, 192, 263 P3d 344 (2011), *rev den*, 354 Or 838 (2014) (internal quotation marks omitted); *see Holdorf*, 355 Or at 823. On the other hand, the standard is not so lax that it can be met by hunches, intuition, or relatively common facts that "are consistent with, but do not necessarily suggest, a crime being committed." *State v. Alvarado*, 257 Or App 612, 629, 307 P3d 540 (2013).

Here, when the officers' interaction with defendant changed from a traffic stop to a criminal investigation, they knew the following facts: (1) defendant's car had visited a known drug house three times in one day; (2) each visit was consistent with visits that drug users or dealers make when purchasing drugs; (3) on the same day as defendant's visits, three other individuals had purchased methamphetamine while visiting the house; (4) defendant and his passenger were known drug users; and (5) defendant appeared to be "extremely nervous" to the point of shaking and placing a cigarette in his mouth backwards.

The information discovered by the officers after stopping the vehicle—defendant's nervousness and past drug involvement by defendant and his passenger—can be considered in the totality of the circumstances, but those facts are not afforded great weight. *See State v. Huffman*, 274 Or App 308, 314, 360 P3d 707 (2015), *rev den*, 358 Or 550 (2016) (nervousness and past drug use); *State v. Bertsch*, 251 Or App 128, 134, 284 P3d 502 (2012) (association with drug user or dealer). Nor is it particularly significant in the abstract that defendant had recently left a location known for drug sales. We rejected a similar combination of factors in *State v. Wiggins*, 262 Or App 351, 362, 324 P3d 626 (2014):

> "[T]he circumstances in this case establish nothing more than that [the] defendant, who had admitted to using drugs months before the stop, was present in high drug use areas and was associating with others who had been or may have been involved in drug-related activities. If that were sufficient to establish reasonable suspicion, we would be effectively sanctioning nonparticularized status-based stops of individuals who have used drugs in the past. The law does not go so far."

(Footnote omitted.)

According to defendant, the facts in two of our recent cases involving proximity to drug activity, association with drug users, and general nervousness are so similar to the facts here that they foreclose us from finding reasonable suspicion. In *State v. Rutledge*, 243 Or App 603, 609, 260 P3d 532 (2011), as in this case, a police officer extended a lawful stop in order to investigate suspected drug activity. The defendant "had just left a motel that the police believed was involved in drug activity, was in a car with a person suspected of drug activity, and acted nervously when asked about her purse." *Id.* at 610. We concluded that the officer did not have reasonable suspicion based upon these facts. *Id.* And in *Bertsch*, the defendant was on probation for a drug offense, made a short stop at an apartment suspected of drug activity, and was accompanied by a known associate of drug users and dealers. 251 Or App at 133. We reversed the defendant's conviction, concluding that these facts were more associational than specific to the defendant, and were nonetheless minimally probative of drug activity. *Id.* at 135.

For several reasons, we are not persuaded that our cases require, or even support, granting defendant's motion to suppress. First, the house involved in this case was neither merely "suspected" of hosting drug activity nor was it a "high crime area." Rather, it was a specific dwelling, the owner of which, on the same day as defendant's arrest, had confirmed that people came there to buy drugs. Defendant's arrest was the result of a targeted, contemporaneous investigation, not a generalized suspicion of drug sales in the area. *Cf. Wiggins*, 262 Or App at 354 (house where the officer had encountered a methamphetamine lab several years prior); *State v. Broughton*, 221 Or App 580, 582, 190 P3d 978 (2008), *rev dismissed*, 348 Or 415 (2010) (house where drug sales were alleged to have occurred a year prior). Second, defendant exhibited the same pattern of behavior as other individuals who were arrested the same day, having left the house in possession of methamphetamine.

We agree with the state that the facts here more closely resemble the facts in cases where less probative factors—nervousness, past drug involvement, association with drug users and locales—appear alongside another more significant link to criminal activity. In *Huffman*, the defendant was stopped in a "high drug-activity area," was on probation for heroin possession, and was nervous and fidgety. 274 Or App at 313. The defendant also left the car immediately after it was stopped, and the officer testified that this "often meant that a suspect was trying to distract him from something in the car." *Id.* We concluded that the defendant's "distracting conduct in leaving the car provided [the officer] with an indication of *why* he might be nervous—that he was trying to hide something." *Id.* at 314 (emphasis in original).

*State v. Barber*, 279 Or App 84, 94, 379 P3d 651 (2016), is also instructive. There, an officer observed the defendant making a brief visit to an apartment where police believed heroin was sold. The officer then saw that the defendant and a passenger "sat in the car and engaged in * * * possible drug activity." *Id.* After receiving this information, a second officer stopped the defendant for a traffic violation; before coming to a stop, the defendant slowly drove through a parking lot "while watching his passenger

fumble under the seat." *Id.* The defendant argued that his case was controlled by *Bertsch.* We distinguished *Bertsch* by reasoning that the officer's knowledge went well beyond the defendant's presence in a location associated with drug activity. *Id.* Instead, we wrote that the officer's knowledge of "possible drug activity" in the car "casts defendant's brief trip to the apartment in a different light." *Id.*

Consistently with *Huffman* and *Barber,* the pattern of prior arrests, as well as the certainty that drug sales took place at the specific house that defendant visited for short periods of time on three occasions during a single day, were sufficient to cast a different light upon defendant's nervousness and his associations with drug activity. Detaining persons in similar circumstances creates no danger of "nonparticularized status-based stops of individuals who have used drugs in the past." *Wiggins,* 262 Or App at 362. The trial court therefore erred when it granted defendant's motion to suppress.

Reversed and remanded.