POWERS, J.
*255 Defendant appeals from a judgment of conviction for carrying a concealed weapon, ORS 166.240, and felon in possession of a restricted weapon, ORS 166.270(2), asserting that the trial court erred by denying his motion to suppress. As explained below, we agree with defendant that the officer stopped him unlawfully when the officer took defendant's knife from his waistband, placed it on the hood of the patrol car, and continued to question him about possession of drugs without having reasonable suspicion. Accordingly, we reverse and remand.
We review the denial of a motion to suppress for errors of law, and we are bound by the trial court's findings of fact so long as they are supported by constitutionally sufficient evidence in the record. State v. Maciel-Figueroa , 361 Or 163, 165-66, 389 P.3d 1121 (2017). Where the trial court did not make express findings and there is evidence in the record from which a finding could have been decided in more than one way, we will presume that the court decided the facts consistent with its ultimate conclusion. Id. at 166, 389 P.3d 1121 ; see also Ball v. Gladden , 250 Or 485, 487, 443 P.2d 621 (1968). We describe the facts in a manner consistent with those standards.
Officer Blair of the Carlton Police Department was dispatched to investigate a report of a suspicious person walking southbound on Highway 47 that "appeared to be tweaking." The caller had reported to dispatch that a suspicious person was walking near the caller's driveway, and that the suspicious person told the caller that he was on his way to Albany when he was kicked out of the car after having an argument with his girlfriend.
Blair briefly spoke with the caller by phone and then drove his patrol car on Highway 47 to the north end of Carlton where he saw defendant walking. Without turning on his overhead lights, Blair parked in the parking lot of a nearby fire hall without blocking defendant's path. Blair, who was in uniform and displaying his badge, approached defendant on foot, identified himself, and asked, "Is everything okay? Can I talk to you for *** a moment?" Blair told defendant that he noticed that his pupils were dilated and *256 that his eyes were bloodshot, and asked defendant if he had been using any drugs or if he had drugs or paraphernalia in his possession. Defendant denied using or possessing drugs or paraphernalia.
Blair then asked defendant if he "would mind lifting *** the bottom of his sweatshirt to expose his waistband and turn around so [Blair] could verify that he did not have any weapons in his waistband." Defendant said that would be fine and, as defendant finished turning around, Blair noticed a large knife in an unsnapped sheath on his belt. Blair then asked defendant if he "would mind if [Blair] removed the knife from the sheath on his waistband" so that he could place it on his patrol car. Defendant said that would be fine, and Blair removed the knife from the sheath (the sheathed knife) and placed it on his patrol car, which was approximately 15 feet away from where they were standing. Blair then returned to where defendant was standing and again asked defendant "if he had anything else on his person that [Blair] should know about, including any dope or controlled substances." Defendant responded, saying that the only other thing "was a family heirloom." When asked what the heirloom was, defendant removed a switchblade from his back pocket and gave it to Blair.
*769 After securing the switchblade in his patrol car, Blair asked defendant to sit on the curb while he continued his investigation. Dispatch informed Blair that defendant was on felony probation, and later Blair arrested defendant. Ultimately, defendant was charged with carrying a concealed weapon and felon in possession of a restricted weapon for possession of the switchblade.
Before trial, defendant filed a motion to suppress and, at the suppression hearing, argued that, although there was no problem with the initial contact, once Blair commented on defendant's appearance and asked him if he had drugs on him the encounter became a stop unsupported by reasonable suspicion in violation of his federal and state constitutional rights. Further, defendant remonstrated that even if it was not a stop at that point, when Blair retained the sheathed knife, the encounter became a stop. The state argued that defendant was not stopped until Blair ordered him to sit on the curb after discovering the switchblade and, *257 even if he was stopped earlier, the stop was supported by reasonable suspicion.[1] When asked by the court whether Blair's retention of the sheathed knife converted the encounter to a stop, the prosecutor responded:
"I think that leans toward the defense in that regard, that he did retain property. But at the time he had justification to make sure [defendant] was free of weapons in order to continue his investigation of whether or not the defendant was party to a domestic violence situation or [was in] possession of a controlled substance. So even then the stop would be justified."
The trial court denied the suppression motion. In addressing when defendant was stopped, the court explained: "The knife on the *** patrol car troubles me a little because that's something more the defendant would had to have done in order to leave, ask for the his knife presumably." However, the court ultimately concluded that the encounter did not become a stop until defendant produced the switchblade. The court also concluded that Blair's observations of defendant's "dilated and bloodshot eyes which, *** based on [Blair's] training and experience, is associated with the consumption of unlawful controlled substances," combined with the initial report that defendant was "tweaking," were sufficient to provide Blair with "reasonable suspicion to believe that a possession of a controlled substance had occurred." After the court denied defendant's motion, defendant entered a conditional guilty plea to carrying a concealed weapon and felon in possession of a restricted weapon, reserving his right to appeal the trial court's denial of his motion. See ORS 135.335(3) (providing that a defendant may reserve the right to appeal from a conditional plea of guilty or no contest).
On appeal, defendant renews only his state constitutional arguments, arguing that Blair stopped him when Blair removed and retained the sheathed knife from *258 defendant's belt and continued to question him. Defendant further asserts that the stop was not supported by reasonable suspicion because Blair stopped defendant solely on the basis of Blair's suspicion that defendant was under the influence of methamphetamine. For its part, the state argues that defendant was not stopped until Blair asked defendant to sit on the curb and that, if he was stopped earlier, the stop was supported by reasonable suspicion of possession of a controlled substance. We agree with defendant on both accounts.
Article I, section 9, of the Oregon Constitution, protects individuals from unreasonable searches and seizures. For purposes of Article I, section 9, there are three categories of encounters between police officers and citizens: (1) encounters that involve "mere conversation," which are not considered seizures under the state constitution; (2) "stops," which involve temporary restraints on an individual's liberty; and (3) "arrests," which are restraints on an individual's liberty that lead to criminal charges.
*770 State v. Miller , 363 Or 374, 379, 422 P.3d 240 (2018). As the Supreme Court has explained, "An officer may stop a person to investigate a crime, without violating Article I, section 9, if the officer has 'reasonable suspicion' that the person has committed or is about to commit a crime." Id.
The distinguishing factor between a seizure and an encounter involving mere conversation "is the imposition, either by physical force or through some show of authority, of some restraint on the individual's liberty." State v. Ashbaugh , 349 Or 297, 309, 244 P.3d 360 (2010) (internal quotes omitted). The test to determine whether an encounter constitutes a seizure is objective: "Would a reasonable person believe that a law enforcement officer intentionally and significantly restricted, interfered with, or otherwise deprived the individual of his or her liberty or freedom of movement[?]" State v. Backstrand , 354 Or 392, 400, 313 P.3d 1084 (2013). The application of that test is fact specific and requires an examination of the totality of the circumstances. Id. Even though an individual may feel pressure to defer to an officer's inherent authority, for a show of authority to be a seizure, an officer must explicitly or implicitly convey that the individual is not free to terminate the encounter.
*259 Id. at 402, 313 P.3d 1084. Put another way, "the confrontation is a seizure only if the officer adds to those inherent pressures by engaging in conduct significantly beyond that accepted in social intercourse." Id. at 402, 313 P.3d 1084 (emphasis in original; internal quotation marks omitted).
In this case, Blair took the sheathed knife and retained it while he continued his investigatory questioning of defendant, repeating his inquiry as to whether defendant had "any dope or controlled substances." Given the totality of the circumstances, defendant was stopped at that point. Although Blair asked for and received consent at each step of the encounter, his actions of removing the sheathed knife from defendant's person and placing it on the hood of his patrol car while he continued questioning defendant about suspected criminal activity were a show of authority that would convey to a reasonable person that she or he was no longer free to leave. Put another way, removing the sheathed knife from defendant, placing it on his vehicle, and continuing to ask questions about possession of controlled substances constituted conduct far outside what is accepted in normal social intercourse under the circumstances. In such a situation, a reasonable person would not think that she or he is free to ignore the officer's questions, walk past the officer, grab the sheathed knife that was placed on the hood of the officer's car, and end the encounter.
The state relies on State v. Beasley , 263 Or. App. 29, 326 P.3d 634 (2014), for the proposition that Blair's actions did not constitute a stop because retaining the sheathed knife and asking further questions is analogous to retaining a suspect's identification and asking questions. In Beasley , however, as well as cases discussed in that opinion- State v. Highley , 354 Or 459, 313 P.3d 1068 (2013), and Backstrand -the fact that the property retained by the officer was identification was important because an officer's mere request for identification does not, in and of itself, amount to a seizure. Beasley , 263 Or. App. at 33-35, 326 P.3d 634. Further in Beasley , Highley , and Backstrand , a critical factor was that the identification was retained only briefly. See Beasley , 263 Or. App. at 35, 326 P.3d 634 ("The officer briefly retained defendant's identification, but not beyond a period sufficient to verify defendant's status."); Highley , 354 Or at 469, 313 P.3d 1068 (the officer held the defendant's *260 license "only briefly-just long enough to write down the license numbers"); Backstrand , 354 Or at 417, 313 P.3d 1084 ("Within a matter of seconds, the verification was sufficiently complete for [the officer] to return the licenses."). Even an officer's request for, and retention of, a person's identification may constitute a seizure if "the content of the questions, the manner of asking them, or other actions that police take (along with the circumstances in which they take them) would convey to a reasonable person that the police are exercising their authority to coercively detain the citizen." Id. , at 412, 313 P.3d 1084. Because retaining the sheathed knife was not analogous to checking a defendant's *771 identification, the reasoning applied in Beasley does not apply here.
Having concluded that defendant was stopped before Blair asked him to sit on the curb, we turn to whether that stop was justified by reasonable suspicion of possession of a controlled substance. An officer has reasonable suspicion to conduct an investigatory stop when the officer "subjectively suspects that an individual has committed, or is about to commit a crime, and that belief is 'objectively reasonable under the totality of the circumstances.' " State v. Huffman , 274 Or. App. 308, 312, 360 P.3d 707 (2015), rev. den. , 358 Or 550, 368 P.3d 25 (2016). "[T]he established standard for reasonable suspicion supporting an investigatory stop of a defendant is met when an officer can point to specific and articulable facts that give rise to a reasonable inference that the defendant committed or was about to commit a specific crime or type of crime." Maciel-Figueroa , 361 Or at 165, 389 P.3d 1121.
There is no dispute that Blair subjectively believed that defendant possessed a controlled substance. The question is whether Blair's belief was objectively reasonable, viz ., whether Blair provided specific and articulable facts to support an inference that defendant possessed a controlled substance. Blair articulated several facts regarding his suspicion: the caller stated that defendant was "tweaking"; defendant exhibited physical symptoms that indicated to Blair that defendant had used methamphetamine; based on Blair's training and experience, individuals who possess controlled substances will carry weapons to protect drugs in their possession; defendant was carrying a knife in a sheath on his belt; and based on Blair's training and experience, *261 persons under the influence of methamphetamine will carry "quantities of the substance, as well as paraphernalia."
The facts articulated by Blair relating to suspicion of intoxication do not support reasonable suspicion of possession of a controlled substance. We have consistently held that evidence of intoxication alone is insufficient to provide reasonable suspicion of possession of a controlled substance. See , e.g. , State v. Farrar , 252 Or. App. 256, 261, 287 P.3d 1124 (2012) (holding that "evidence of methamphetamine use, without more, does not give rise to reasonable suspicion that defendant presently possesses more methamphetamine"); State v. Morton , 151 Or. App. 734, 739, 951 P.2d 179, rev. den. , 327 Or 521, 971 P.2d 408 (1998) (officer's observations of the defendant's behavior and appearance which were consistent with marijuana intoxication were not a sufficient basis for reasonable suspicion of possession). This leaves only the testimony that, based on his training and experience, "people who use methamphetamine or other controlled substances sometimes do carry concealed weapons *** [f]or the purpose of potentially protecting their drugs that they possess or also just being irrational and being paranoid *** after using drugs."
With respect to an officer's training and experience, "we must not only ensure the officer's knowledge is connected with the facts of a particular case; we must also examine the knowledge itself." State v. Daniels , 234 Or. App. 533, 541, 228 P.3d 695, rev. den. , 349 Or 171, 243 P.3d 70 (2010). Defendant's act of carrying a weapon while being under the influence of methamphetamine does not, without more, support an inference that defendant is in possession of methamphetamine. First, we note that Blair testified that individuals who use methamphetamine sometimes carry concealed weapons. He did not testify that individuals who carry concealed weapons also possess a controlled substance. Second, Blair indicated that an individual under the influence of a controlled substance carrying a weapon may be doing so because they are "irrational and paranoid after using drugs," not necessarily because they possess a controlled substance at the time. Finally, Blair provided no indication as to the basis of his training and experience leading to this conclusion. Cf. State v. Jones , 245 Or. App. 186, 193, 263 P.3d 344, rev. den. , 354 Or 838, 325 P.3d 739 (2014) (an officer's general testimony that his experience *262 had taught him that individuals on post-prison supervision are "oftentimes" not permitted to go to establishments where alcohol is consumed was not sufficient to support reasonable suspicion without some indication of the experience on which the fact is based). Consequently, Blair *772 did not articulate facts sufficient to form an objectively reasonable belief that defendant possessed a controlled substance.
In short, because defendant was stopped when Blair removed and retained the sheathed knife and placed it on the hood of his patrol car while continuing to question defendant, and because that stop was not supported by reasonable suspicion that defendant possessed a controlled substance, the trial court erred in denying defendant's motion to suppress.
As previously noted, defendant's convictions in this case were the result of a conditional guilty plea under ORS 135.335(3), which provides:
"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."
Accordingly, we reverse and remand the judgment of conviction so that defendant may decide whether to withdraw his guilty plea.
Reversed and remanded.

During the suppression hearing, the state also argued that Blair had reasonable suspicion of a domestic violence assault; however, the court concluded that there was "no specific reference or information that would lead a reasonable person to conclude that there may have been an assault." On appeal, the state does not challenge the court's conclusion that there was no reasonable suspicion for any domestic violence assault.