Argued and submitted October 4, 2019, reversed and remanded May 5, 2021

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JUSTIN RAY ESCUDERO,
*Defendant-Appellant.*

Washington County Circuit Court
17CR54332; A167167

489 P3d 569

In this criminal case, defendant appeals from a judgment convicting him of driving under the influence of intoxicants, ORS 813.010, challenging the denial of his motion to suppress evidence. The trial court concluded that the deputy did not unconstitutionally extend the traffic stop under the "unavoidable lull" doctrine when he called for a drug-detection dog eight seconds into that stop. After briefing and argument, the Supreme Court decided *State v. Arreola-Botello*, 365 Or 695, 451 P3d 939 (2019), which abrogated that doctrine. *Held*: Following *Arreola-Botello*, the Court of Appeals concluded that the trial court erred in denying defendant's suppression motion because there was no independent constitutional justification to call for a drug-detection dog. The court further rejected the state's alternative basis for affirmance that defendant's consent to search the vehicle was attenuated from any illegality.

Reversed and remanded.

Oscar Garcia, Judge.

Joshua B. Crowther, Chief Deputy Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.*

POWERS, J.

Reversed and remanded.

_____

* Egan, C. J., *vice* Schuman, S. J.

**POWERS, J.**

In this criminal case, defendant appeals from a judgment convicting him of driving under the influence of intoxicants (DUII), ORS 813.010. In his sole assignment of error, defendant challenges the denial of his motion to suppress evidence. The trial court concluded that the deputy that stopped defendant for a traffic infraction did not unconstitutionally extend the traffic stop under the "unavoidable lull" doctrine when he called for a drug-detection dog eight seconds into that stop. After briefing and argument in this case, the Supreme Court decided *State v. Arreola-Botello*, 365 Or 695, 451 P3d 939 (2019), which abrogated that long-standing doctrine. Following *Arreola-Botello*, we conclude that the trial court erred in denying defendant's suppression motion because there was no independent constitutional justification to call for a drug-detection dog. We further reject the state's alternative basis for affirmance based on attenuation. Accordingly, we reverse and remand.

We review the denial of a motion to suppress for legal error and, in so doing, we are bound by the trial court's factual findings if there is any constitutionally sufficient evidence to support them. *State v. South*, 300 Or App 183, 184, 453 P3d 592 (2019), *rev den*, 366 Or 259 (2020). In the absence of an express factual finding by the trial court, we presume that the court found facts consistent with its ultimate conclusion. *Id.* We recount the facts consistently with those standards.

In August 2017, at 9:41 p.m., Deputy Gerba initiated a traffic stop when he saw defendant driving without his taillights activated. Eight seconds into the stop, and before Gerba contacted defendant, Gerba called for a "dope dog." When Gerba contacted defendant to request his license, registration, and proof of insurance, defendant admitted that he did not have a driver's license. Using defendant's identifying information, Gerba was able to confirm through dispatch that defendant was on probation for drug offenses and that he had a suspended license.

Five minutes into the stop, Sergeant DiPietro arrived with Tux, a drug-detection dog. Gerba was writing a traffic citation and told DiPietro that defendant was on

probation for a drug-possession conviction. DiPietro went to talk with defendant and told him that "when people are on probation for narcotic offenses *** I come because I have a narcotic dog." DiPietro noticed that defendant was "profusely sweating." Eventually, defendant and the passenger (the owner of the car) gave consent to search the car with the drug dog. Tux alerted to drugs.

Meanwhile, Deputies Gilderson and Serrano arrived at the scene to investigate defendant for DUII. After Gilderson conducted his investigation, which included a number of field sobriety tests, he arrested defendant based on probable cause of DUII.

Before trial, defendant moved to suppress evidence gathered from the traffic stop, arguing that Gerba had unlawfully extended the traffic stop by calling for a drug-detection dog. He also argued that Gerba and DiPietro extended the stop by initiating a criminal investigation without reasonable suspicion. The state responded that Gerba's actions occurred during an "unavoidable lull" during the processing of the traffic citation. The trial court agreed with the state's position and denied the motion. The court concluded that, although the record did not have any articulated basis for Gerba to request a drug-detection dog, the call was made while Gerba was "doing his thing, he's doing whatever he's doing" and that the call happened "very quickly." The court then ruled that, during a period of lawful detention, DiPietro obtained defendant's consent to search and that Gilderson lawfully developed probable cause to arrest defendant for DUII. The parties proceeded to a stipulated-facts trial, and the court found defendant guilty.

On appeal, defendant renews his contention, among other arguments, that Gerba unlawfully extended the permissible duration of the traffic stop when he called for the drug-detection dog. At oral argument, the state conceded that Gerba's call for a drug-detection dog was unlawful.[1] The

_____

[1] The state did not articulate a basis for its concession that Gerba's call for a drug dog was unlawful. Oral argument occurred more than a month before the Supreme Court decided *Arreola-Botello*, which foreclosed any "unavoidable lull" argument, thus the concession may be based on an acknowledgment that Gerba impermissibly extended the traffic stop by calling for the drug dog. We

state nonetheless urges us to affirm defendant's conviction based on an attenuation argument raised in the answering brief under the "right for the wrong reason" doctrine. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (describing the "right for the wrong reason" doctrine). The state remonstrates that "the alleged police illegality did not taint the challenged evidence and thus there was no basis for applying Article I, section 9's exclusionary rule." That is, the state suggests that, "even assuming that Gerba's brief call for a drug dog unlawfully extended the traffic stop at that point, the evidence discovered as a result of DiPietro's and Gilderson's activities was not tainted by the preceding police illegality." As we further explain, we conclude that *Arreola-Botello* controls and reject the state's alternative basis for affirmance.

We begin with *Arreola-Botello*. In that case, the court held that for purposes of Article I, section 9, of the Oregon Constitution, "all investigative activities, including investigative inquiries, conducted during a traffic stop are part of an ongoing seizure and are subject to both subject-matter and durational limitations." 365 Or at 712. In rejecting the "unavoidable lull" doctrine, the court emphasized that officers' activities during a traffic must be "reasonably related to the purpose of the traffic stop" or be supported by an independent constitutional justification. *Id.*

As a result of *Arreola-Botello*, "absent an independent constitutional justification, a drug-detecting dog \* \* \* generally cannot, consistent with Article I, section 9, sniff a car for drugs during a traffic stop." *State v. Soto-Navarro*, 309 Or App 218, 223, 482 P3d 150 (2021). Therefore, in the post-"unavoidable lull" landscape, Gerba's call for a drug dog eight seconds into a traffic stop—before he had made contact with defendant or developed any independent constitutional justification to investigate anything beyond the traffic infraction—was an unconstitutional investigative action.

Turning to the state's attenuation argument, to affirm the trial court's suppression ruling on an alternative

need not evaluate the merits of that concession, however, given our conclusion that *Arreola-Botello* is controlling here.

basis that was not considered: (1) the facts of the record must be sufficient to support the alternative basis for affirmance; (2) the trial court's ruling must be consistent with the view of the evidence under the alternative basis for affirmance; and (3) the record must materially be the same one that would have developed had the prevailing party raised the alternative basis for affirmance at trial. *State v. Booth*, 272 Or App 192, 199, 355 P3d 181 (2015) (internal quotation marks, brackets, and citation omitted). On the third requirement, the state contends that "it does not appear that the record would have developed in a materially different way had the state made the attenuation argument below." Defendant takes issue with that claim, arguing that the record would have developed differently because, among other things, "the trial court did not resolve the factual issues necessary to determine whether the officers exploited the illegality—after all, the trial court found no illegality." We agree with defendant's argument.

As we explained in *Booth*, the determination of whether law enforcement exploited unlawful conduct to obtain consent "involves a fact-specific inquiry into the totality of the circumstances to determine the nature of the causal connection." *Id.* (internal quotation marks, brackets, and citation omitted). Because the attenuation argument is raised for the first time on appeal, the trial court never engaged in the fact-specific inquiry on whether the state carried its burden of proving that defendant's consent was independent of, or only tenuously related to, the unlawful police conduct. Accordingly, because the record may have developed differently with respect to the exploitation analysis, we decline to consider the state's alternative basis for affirmance. *See, e.g.*, *State v. Heater*, 271 Or App 538, 540, 351 P3d 776 (2015) (concluding that the record may have developed differently if the state had raised its "no exploitation" argument at trial).

Reversed and remanded.