Argued and submitted October 27, 2021, reversed and remanded
March 15, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HASSAN SALEH MUHSEN GABR,
*Defendant-Appellant.*

Washington County Circuit Court
19CR52323; A173392

527 P3d 49

Defendant appeals a judgment of conviction for commercial sexual solicitation, ORS 167.008. He assigns error to the trial court's denial of his motion to suppress all evidence obtained during a traffic stop. Defendant contends that police unlawfully expanded the traffic stop into a criminal investigation by calling for a drug-detection dog at the initiation of the traffic stop without objectively reasonable suspicion of illegal drug activity. The state concedes that the officer's call for a drug-detection dog was illegal, but the state argues for the first time that defendant's inculpatory statement (the focus of the suppression motion) was sufficiently attenuated from the initial illegality because of intervening lawful acts and the lack of exploitation by the officers of the initial illegality. *Held*: The trial court erred. The Court of Appeals agreed with and accepted the state's concession that there was not objectively reasonable suspicion for the officer to call for a drug-detection dog at the outset of the traffic stop. Further, the court declined to consider the state's attenuation argument because the record might have developed differently below had defendant been on notice that the state was arguing attenuation.

Reversed and remanded.

Oscar Garcia, Judge.

Bruce A. Myers, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Reversed and remanded.

**ORTEGA, P. J.**

Defendant appeals a judgment of conviction for commercial sexual solicitation, ORS 167.008. He assigns error to the trial court's denial of his motion to suppress all evidence obtained during the traffic stop. Defendant contends that police unlawfully expanded a traffic stop into a criminal investigation by calling for a drug-detection dog at the initiation of the traffic stop without objectively reasonable suspicion of illegal drug activity. The state concedes that the officer's call for a drug-detection dog was illegal, but the state argues for the first time, that defendant's inculpatory statement (the focus of the suppression motion) was sufficiently attenuated from the initial illegality because of intervening lawful acts and the lack of exploitation by the officers of the initial illegality. Defendant replies that we should not consider the state's attenuation argument, and, regardless, the argument fails on the merits. We agree with defendant that there was not objectively reasonable suspicion for the officer to call for a drug-detection dog at the outset of the traffic stop. We also decline to consider the state's attenuation argument because it was not made below, and the record might have developed differently had the state argued attenuation at the motion hearing. Thus, we conclude that the court erred in denying defendant's motion to suppress, and accordingly reverse and remand.

We review the trial court's ruling denying defendant's motion to suppress for errors of law. *State v. Maciel-Figueroa*, 361 Or 163, 165, 389 P3d 1121 (2017). In doing so, we are bound by the court's factual findings if there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We state the facts consistently with the trial court's explicit and implicit findings.

## I.   FACTS AND PROCEEDINGS BELOW

The solicitation charge against defendant arose after officers initiated a traffic stop in connection with a drug investigation that they were conducting at the Eider Court Extended Stay Hotel. Deputies Bowler and Wilde were working with other officers to surveil Room 139 at the hotel.

A few days before the stop at issue, a front desk worker at the hotel reported seeing people enter Room 139 and leave after short periods of time. Based on that information, police stopped the vehicles of the people seen leaving Room 139, resulting in two drug arrests. On the night in question, Wilde received information from the same hotel informant that people had been coming and going from Room 139 all day, and that defendant had entered the room and spent less than an hour inside. Wilde shared the information about defendant with Bowler and asked him to stop defendant's car and investigate. When Bowler saw defendant's car leave the hotel parking lot, he followed it and, about a half mile away, stopped it for a traffic violation. At that point, Bowler believed that he had reasonable suspicion that defendant had been part of a drug deal. At the initiation of the traffic stop and before making contact with defendant, Bowler called for Corporal Akin and his canine partner, Stark, to come to the scene.

As Bowler approached defendant's car, he noticed that "plastic seemed to be either pulled off or moved around" inside the car. He could see the "non-flush plastic" from outside of the car, and it appeared that the dash, door panels, and other things were not fitting. Based on his prior experience in drug investigations, those were indications of a "trap car" or a "stash car" that has hidden compartments to conceal drugs. Having previously found drugs in stash car compartments, Bowler suspected that there could be drugs inside defendant's car.

Deputy Coon arrived shortly after Bowler stopped defendant, and Akin and Stark arrived a couple of minutes after Bowler's call. After Akin walked Stark around the car, Stark alerted to narcotic drugs near the open window on the driver's side and had the same alert response after a second pass around the car. Bowler asked defendant to get out of the car, and Akin searched inside. Akin initially did not find any "usable quantity of narcotics" inside the car. On a second search, Akin placed Stark inside the car to see if he was missing anything or to pinpoint the location of possible drugs. Stark showed interest in the driver's seat but did not come to a full alert. That indicated to Akin that Stark was reacting to odor there or along the seat.

While Akin searched the car, Bowler began asking defendant questions, including, "Where were you before this?" and "Do you have any drugs on you?" Then defendant granted consent for Bowler to search his person while the dog searched defendant's car.

After neither search yielded any drugs, Coon began interviewing defendant in Bowler's presence. Coon also asked defendant where he had been earlier in the day and what he had been doing for the several hours preceding the stop. During Coon's questioning, defendant confessed that he had received an "erotic massage" at the hotel for $100. Based on defendant's statements, Bowler called Wilde to the scene to continue questioning defendant regarding solicitation. Wilde arrived about five minutes later and ultimately cited defendant for commercial sexual solicitation.

Before trial, defendant filed a motion to suppress all evidence discovered in the course of the traffic stop. Relying on *State v. Arreola-Botello*, 365 Or 695, 451 P3d 939 (2019), defendant argued that the police unlawfully expanded the traffic stop into a criminal investigation unsupported by reasonable suspicion when (1) Bowler called for a drug-detection dog immediately upon making the traffic stop and (2) Bowler and Coon continued to question defendant *after* searches of his car and his person had produced no drugs. The state responded that the deputies' investigative activities during the traffic stop were justified by reasonable suspicion that defendant was involved in illegal drug activity at the hotel.

The trial court ruled that, under the totality of the circumstances, the police had reasonable suspicion to investigate illegal drug activity when Bowler called for the drug-detection dog. The court further rejected defendant's contention that reasonable suspicion of a drug crime had dissipated when defendant made his inculpatory statements. Rather, the court opined that, even though no drugs had been found after searching defendant's car and person, Coon's questions were within the scope of the drug investigation and following up on why the dog had alerted to the odor of narcotics. Thus, the court denied defendant's motion to suppress all evidence after Bowler called for the drug-detection dog.

Thereafter, in a stipulated facts trial, the court found defendant guilty of the charged offense, and a judgment of conviction was entered.

On appeal, defendant challenges the court's denial of his motion to suppress and renews the arguments he made below. Specifically, defendant argues that under our case law the purely associational facts known to Bowler when he called for a drug-detection dog did not give rise to reasonable suspicion to justify a criminal investigation. *See State v. Bertsch*, 251 Or App 128, 134-35, 284 P3d 502 (2012) (concluding that the defendant's brief presence in a location associated with drug activity was insufficient to support an objectively reasonable belief that the defendant was engaged in drug activity because those facts are "purely associational"). Alternatively, defendant invokes *Arreola-Botello* to argue that, "[w]ithout reasonable suspicion of drug possession, and no new independent constitutional justification to keep questioning defendant, officers unlawfully expanded the scope of their investigation by continuing to ask defendant questions after they did not find drugs." *See* 365 Or at 712 (rejecting the "unavoidable lull" doctrine and concluding that "all investigative activities, including investigative inquiries, conducted during a traffic stop are part of an ongoing seizure and are subject to both subject-matter and durational limitations").

On appeal, the state concedes that the officer's call for a drug-detection dog was illegal but argues, for the first time, that defendant's inculpatory statement was sufficiently attenuated from the initial illegality because of intervening lawful acts and because the officers did not exploit the initial illegality. First, the state argues that Bowler's unlawful detention of defendant for the time it took the deputy to call for the dog was brief and that the investigative activities that followed—the dog's deployment and Bowler's and Coon's questioning of defendant—were supported by the necessary reasonable suspicion. Next, the state contends that the additional information that Bowler observed indicating that defendant's car was a "trap car" or a "stash car," coupled with the information that defendant had been seen contacting someone in Room 139, gave rise to reasonable suspicion that defendant had been involved in illegal drug

activities there. *See State v. Barber*, 279 Or App 84, 92, 379 P3d 651 (2016) (distinguishing *Bertsch* and stating that "[a] stop of a person by a police officer is supported by reasonable suspicion when the officer subjectively believes that the person has committed or is about to commit a crime and that belief is objectively reasonable in light of the totality of the circumstances existing at the time of the stop[;] [t]o be objectively reasonable, the officer's suspicion must be based on specific and articulable facts" (internal citation and quotation marks omitted)).

The state argues further that reasonable suspicion existed by the time the dog was deployed, triggering a lawful search of the car, and that reasonable suspicion had not dissipated when the questioning that produced defendant's incriminating statements occurred, because Bowler testified that Akin was still searching the car for drugs when defendant made his statements. The state acknowledges that it did not make those arguments below and asks us to affirm defendant's conviction under the "right for the wrong reason" doctrine. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (describing the "right for the wrong reason doctrine" and noting that we may only exercise our discretion to affirm if the record would not have developed in a materially different way had the argument been made below). The state argues that the record would not have been materially different had it raised its attenuation arguments below because the essential question was whether or not there was reasonable suspicion at each stage of the investigation, which was litigated by the parties below and addressed in the court's factual findings and rulings.

In reply, defendant contends that even with the "trap car" evidence, the police did not have reasonable suspicion to conduct a criminal investigation. Further, defendant argues that Bowler's testimony that Akin was still searching the car for drugs when Coon questioned defendant was contradicted by Coon's own testimony that he had questioned defendant after the unsuccessful searches of defendant and his car. Thus, even if there was reasonable suspicion of drug possession, it had dissipated, and any

additional questioning was unlawful under *Arreola-Botello*. Alternatively, defendant argues that we should reject the state's attenuation argument on procedural grounds and also on the merits. Defendant argues that the record would have developed differently because defendant would have argued that there was a causal link between the initial illegality and defendant's statements. Further, defendant argues, it is impossible to say whether he would have made his incriminating statements had Bowler not first called for the drug-detection dog; thus, the ensuing events were inextricably tied to the initial illegality, and defendant's statements must be suppressed.

## II.   ANALYSIS

Article I, section 9, of the Oregon Constitution protects individuals against unreasonable searches and seizures. When an officer has lawfully stopped a person for a noncriminal traffic violation, the "officer is limited to investigatory inquiries that are reasonably related to the purpose of the traffic stop or that have an independent constitutional justification." *Arreola-Botello*, 365 Or at 712. An officer may expand a traffic stop into a criminal investigation if that officer has reasonable suspicion of criminal activity. *State v. Huffman*, 274 Or App 308, 312, 360 P3d 707 (2015), *rev den*, 358 Or 550 (2016). Reasonable suspicion exists when an officer subjectively believes that the person has committed or is about to commit a specific crime or type of crime, and that belief is objectively reasonable in light of the totality of the circumstances known to the officer at the time of the stop. *Maciel-Figueroa*, 361 Or at 182-83. Reasonable suspicion must be based upon "specific and articulable facts." *Id*.

As an initial matter, we agree with defendant and accept the state's concession that the officer's call for a drug-detection dog was illegal. *See State v. Escudero,* 311 Or App 170, 173, 489 P3d 569 (2021) (concluding that as a result of *Arreola-Botello*, "in the post-'unavoidable lull' landscape," the officer's "call for a drug dog eight seconds into the traffic stop—before he had made contact with defendant or developed any independent constitutional justification to investigate anything other than the traffic infraction—was an unconstitutional investigative action").

We turn to the state's argument that the initial illegality was sufficiently attenuated from defendant's inculpatory statements, and therefore his statements did not require suppression. *See State v. Mock*, 310 Or App 454, 468, 485 P3d 295 (2021) (explaining that the state may rebut the presumption that evidence must be suppressed "by proving that the unlawful conduct was independent of, or only tenuously related to the disputed evidence" (internal citation and quotes omitted)). The state bears the burden of proof and persuasion that the violation of a defendant's rights had such a tenuous factual link to the disputed evidence that the unlawful police conduct cannot be properly viewed as the source of that evidence. *State v. Gilkey*, 317 Or App 752, 762, 505 P3d 1029 (2022).

In this case, the state's attenuation argument was not made below. Before we may exercise our discretion to affirm a trial court's ruling on an alternative basis, we must first determine whether the following three criteria exist: the facts of record must be sufficient to support the alternative basis for affirmance, the trial court's ruling must be consistent with that view of the evidence, and the record must be materially the same as the one that would have developed had the prevailing party raised the alternative basis for affirmance below. *Outdoor Media Dimensions Inc.*, 331 Or at 659-60.

Even assuming, without deciding, that the record below meets the first two criteria, we are not persuaded that the record would have been materially the same had the state argued attenuation below. During the motion hearing, the state focused solely on arguing that the officers' actions were lawful at each stage of the stop and ensuing investigation. Thus, defendant had no notice or opportunity to challenge the state's theory that any initial illegality was sufficiently attenuated from defendant's inculpatory statements. Now, defendant argues that he was deprived of the opportunity to present evidence on the causal connection between the initial illegality and defendant's inculpatory statements. We agree and, thus, decline to address the state's attenuation argument because there were questions as to how the record might have developed differently or what inferences the trial court might have drawn from the

record. *Cf. Escudero*, 311 Or App at 174 (declining to consider the state's alternative basis for affirmance where the record may have developed differently with respect to the exploitation analysis involving the fact-specific question of the defendant's voluntary consent to search the car with a drug dog); *Mock*, 310 Or App at 464 (rejecting the state's attenuation argument because the purpose or lawfulness of the officer's questioning was not fully explored below but the topic was "highly relevant to whether the travel question was reasonably related to the traffic investigation"); *State v. Najar*, 287 Or App 98, 109-10, 401 P3d 1205 (2017) (declining to consider the state's attenuation argument as an alternative basis to affirm because, "[a]t a minimum, [the defendant] might have chosen to testify about how the initial illegal seizure contributed to his ultimate consent and admission to possessing drugs" and therefore might have created a different record below had the state raised the issue). Given the foregoing, we presume that defendant's statements were tainted by the initial violation and should have been suppressed. *State v. Jackson*, 268 Or App 139, 151, 342 P3d 119 (2014) ("Whenever the state has obtained evidence following the violation of a defendant's Article I, section 9 rights, it is presumed that the evidence was tainted by the violation and must be suppressed." (Citing *State v. Unger*, 356 Or 59, 84, 333 P3d 1009 (2014).)). Thus, we conclude that the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.