736 December 28, 2023 No. 682

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AMMAHAD ANTHONY BRADLEY,
*Defendant-Appellant.*

Washington County Circuit Court
19CR49631; A173064

Beth L. Roberts, Judge.

Argued and submitted June 21, 2022.

Rond Chananudech, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services. Ammahad Bradley filed the supplemental brief *pro se*.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

POWERS, J.

Reversed and remanded.

**POWERS, J.**

Defendant appeals from a judgment of conviction for unlawful delivery of heroin, ORS 475.850, possession of heroin, ORS 475.854, unlawful delivery of methamphetamine, ORS 475.890(2), and possession of methamphetamine, ORS 475.894, advancing three main contentions: (1) the trial court erred in denying his motion to suppress evidence because the officer's question expanded the scope of the traffic stop without an independent constitutional justification; (2) the trial court improperly entered unlawful delivery convictions based on a change in the law that developed after his trial; and (3) the trial court erred in imposing court-appointed attorney fees. On the first issue, defendant contends that, under Article I, section 9, of the Oregon Constitution, the officer's question, "Do you have anything on you that you're not supposed to have?" and subsequent request to conduct a patdown and search unlawfully expanded the scope of the stop. As explained below, we agree that the officer's inquiry violated the subject-matter limitation that Article I, section 9, imposes on investigatory stops given the circumstances in which it arose and that the state did not meet its burden to prove that the violation did not affect defendant's subsequent consent to a patdown and search of his pockets. Accordingly, the trial court erred in denying defendant's motion to suppress the evidence discovered during the stop, and we reverse and remand.

We review the denial of defendant's motion to suppress for legal error and, in doing so, we are bound by the trial court's findings of fact so long as they are supported by constitutionally sufficient evidence in the record. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). Consistent with that standard, we describe the facts surrounding the challenged stop.

Beaverton Police Officer Meekisho was driving his marked police vehicle around 4:00 a.m. when he noticed defendant standing outside of his parked car in a Plaid Pantry parking lot. Defendant "caught [his] eye," and Meekisho turned around and parked in a parking lot across the street where he could observe defendant. He ran defendant's license plate and learned that defendant had

previously been arrested in the State of Washington for a weapons offense and drug charges. Meekisho observed defendant for about 40 minutes, during which defendant entered and exited the Plaid Pantry store at least three times.

Eventually, defendant got back into his car and drove out of the parking lot. As he did so, Meekisho saw him commit two traffic violations: He failed to come to a full stop before leaving the parking lot, and he turned into the far-right lane rather than into the closest available lane on a street with two lanes going the same direction. Based on those violations, Meekisho pulled behind defendant and initiated a traffic stop. Officer Croissant, Meekisho's partner, arrived on scene less than a minute after Meekisho initiated the stop. Meekisho approached defendant's vehicle with Croissant coming up behind him. Meekisho asked defendant for his driver's license, registration, and proof of insurance, and engaged defendant in additional questioning such as whether the car was registered to him, where defendant lived, and how long he had lived there. Meekisho observed that defendant's eyes were bloodshot, his speech was slow, and he had a "very lethargic look." Based on his training and experience, Meekisho believed that defendant was under the influence of intoxicants. He asked defendant to step out of his vehicle to conduct field sobriety tests (FSTs), and defendant agreed to do so.

After defendant got out of his vehicle, Meekisho asked defendant, "Do you have anything on you that you are not supposed to have?" Meekisho did not recall how defendant responded to that question. Meekisho then asked, "Is it okay if I pat you down?" Defendant consented and began to reach into his own pockets, removing a writing pen. Meekisho put his hands on defendant's arm, stopping him from reaching further into his pockets. Meekisho asked if he could remove all the items from defendant's pockets himself. Defendant agreed and put his hands up away from his own pockets.

Meekisho reached into defendant's pockets and pulled out a wad of cash and, as he did so, a folded-up piece of tin foil fell to the ground. Meekisho could see a brown, pasty

residue on the foil and believed it to be heroin. Defendant was arrested, and the officers discovered large quantities of heroin, methamphetamine, and pills during a search of defendant's car incident to his arrest.

Defendant filed a motion to suppress all evidence seized from his person and vehicle, arguing that Meekisho's inquiries were not reasonably related to the purpose of the stop and that he unlawfully extended the stop when he asked for consent to search and felt the outside of defendant's pockets. At the suppression hearing, Meekisho testified that his intent in asking if defendant had "anything" was primarily to discover whether defendant had weapons on him, and, secondarily, whether he was in possession of drugs. Meekisho noted that defendant was calm and compliant during the stop, but that, based on his training and experience, people who are using drugs are generally more erratic or prone to making decisions that put the officer at risk. He further testified that he asks to conduct a patdown before administering FSTs because the tests require that he stand within close proximity of the suspect and focus on their eyes while both of his hands are occupied, making him vulnerable to attack.

The trial court denied the motion to suppress, concluding that there was a constitutional basis for Meekisho to conduct the DUII investigation, that the patdown and his requests for consent to search were reasonably related to officer safety concerns, and that the consent to search was voluntary. Following a bench trial, defendant was convicted on several drug charges. However, defendant was not charged with DUII, as further testing done at the station led officers to believe that defendant was not intoxicated.

On appeal, defendant renews his argument that Meekisho unlawfully expanded the subject-matter of the DUII investigation by inquiring about items in defendant's possession unrelated to that investigation. *See State v. Arreola-Botello*, 365 Or 695, 712, 451 P3d 939 (2019) (concluding that "all investigative activities, including investigative inquiries, conducted during a traffic stop are part of an ongoing seizure and are subject to both subject-matter and durational limitations"). Defendant contends that

Meekisho's testimony about the general risks associated with administering FSTs was insufficient to establish a circumstance-specific danger that would justify the inquiries and patdown, especially considering defendant's calm demeanor and the presence of a second officer.

The state remonstrates that Meekisho's inquiries were reasonably related to the DUII investigation. It asserts that, to the extent Meekisho's questions were about drugs, such inquiries were permissible given that Meekisho had probable cause that defendant was under the influence of intoxicants. To the extent that his inquiries were about weapons, the state contends that Meekisho's testimony identified the safety concerns associated with administering roadside FSTs in the early morning hours, and that the Supreme Court has previously held that such conditions provide sufficient justification for an officer to inquire about weapons. *See State v. Miller*, 363 Or 374, 387-88, 422 P3d 240, *adh'd to as modified on recons*, 363 Or 742, 428 P3d 899 (2018) (concluding that, where an officer testified that "[t]here is absolutely nothing safe about administering field sobriety tests on the side of the road at 12:30 in the morning," the state had "met its burden to prove that the officer reasonably perceived a circumstance-specific danger and also reasonably decided that a question about firearms was necessary to address that danger"). In its brief, the state does not advance any attenuation argument or contend that any constitutional violation resulting from the officer's conduct was harmless under the circumstances of the case.

In reply, defendant asserts that Meekisho's question was not specific to weapons or drugs; rather, his inquiry was a broad, limitless question about any possessory offense. Asking broadly if he has anything he is not supposed to have, defendant argues, is distinguishable from cases like *Miller*, where the officer had safety concerns but asked specifically if the defendant had a firearm. 363 Or at 377, 388. Additionally, defendant acknowledges that, in some cases, a defendant's consent can attenuate the taint from an Article I, section 9, violation, but he argues that the state has the burden to establish that tenuous connection. *See State v. Unger*, 356 Or 59, 84, 333 P3d 1009 (2014) (adhering

to the principle that, where a defendant consents to a search following unlawful police conduct, the state is required to prove that the consent "was independent of, or only tenuously related to, the illegal police conduct"). Because the state made no such argument, defendant asserts that a conclusion that there was an Article I, section 9, violation also necessitates a conclusion that the evidence be suppressed.

Article I, section 9, establishes "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure."[1] For purposes of a traffic stop for a noncriminal violation, Article I, section 9, requires that an officer's investigative questions and activities be reasonably related to the purpose that permitted the officer to stop the individual in the first place or have an independent constitutional justification. *Arreola-Botello*, 365 Or at 711-12. Determining a person's identity and verifying that he, she, or they hold valid driving privileges are generally reasonably related to the purpose of a traffic stop, so long as those activities are not unreasonably lengthy. *State v. Watson*, 353 Or 768, 782, 305 P3d 94 (2013). An officer may have an independent justification to expand the scope of a traffic stop into a criminal investigation if the officer has reasonable suspicion of criminal activity. *State v. Huffman*, 274 Or App 308, 312, 360 P3d 707 (2015), *rev den*, 358 Or 550 (2016). An officer has reasonable suspicion when he, she, or they subjectively believe that the person has committed or is about to commit a specific crime or type of crime, and that belief is objectively reasonable in light of the totality of circumstances known to the officer. *Maciel-Figueroa*, 361 Or at 182.

We begin with defendant's argument that Meekisho's question—"Do you have anything on you that you are not supposed to have?"—was not reasonably related to the purpose of the stop. After making contact with defendant, Meekisho developed reasonable suspicion that defendant

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

had committed the crime of DUII.[2] Thus, Meekisho's reasonable suspicion that defendant committed the crime of DUII defined the constitutionally permissible boundaries of the investigation and required that his questions and activities "be reasonably related to that investigation and reasonably necessary to effectuate it." *Watson*, 353 Or at 781. The question came after defendant agreed to perform FSTs, but before he provided consent for Meekisho to pat him down and to search his pockets.

Meekisho testified that the primary purpose of his question was to ask if defendant was carrying a weapon but that it was also intended to inquire about drugs. We have generally held that it is permissible for an officer conducting a DUII investigation to inquire as to whether a defendant has any alcohol or controlled substances in the vehicle. *See State v. Williams*, 297 Or App 384, 387-88, 441 P3d 242, *rev den*, 365 Or 658 (2019) (holding that such questions are reasonably related to the purpose of a DUII stop). Further, where an officer subjectively perceives danger from the circumstances related to a roadside DUII investigation, an officer's inquiry as to whether a defendant has a firearm can be reasonably related to the purpose of that investigation. *See Miller*, 363 Or at 388-89 (so holding). In this case, Meekisho testified that he suspected defendant to be under the influence of intoxicants and that he had safety concerns specific to the circumstances of the DUII investigation that he was conducting. Specifically, he testified that, while conducting FSTs, he would have to stand near defendant, both of his hands would be occupied, and that people under the influence of intoxicants are more erratic and prone to making decisions likely to put him at risk.

Despite those concerns, Meekisho's question was not specific to drugs or weapons but was instead a broad question that encompassed any possessory offense and thus was not related to the purpose of the stop. Article I, section 9, requires that an officer's investigative inquiries during a traffic stop have durational and subject-matter limitations.

---

[2] Defendant does not challenge whether Meekisho had the reasonable suspicion necessary to justify the DUII investigation; thus, we do not address that issue.

*Arreola-Botello*, 365 Or at 712. Asking a driver if there is "anything" that the driver is "not supposed to have" is an investigative inquiry that is not limited by its subject matter. As defendant's argument observes, such a broad inquiry encompasses an array of possessory offenses unrelated to the purpose of the investigation. *See, e.g.*, ORS 164.095 (stolen property); ORS 164.235 (burglar's tools); ORS 163.689 (materials depicting sexually explicit conduct of a child). Meekisho's testimony at the suppression hearing clarifying the scope of his question was insufficient to place the question within the bounds of a constitutionally permissible inquiry. Thus, despite his legitimate safety concerns, Meekisho's broad question to defendant if he had "anything" that he was "not supposed to have" was a violation of Article I, section 9, because it was not limited to the subject matter of the investigation.

That conclusion, however, does not complete the analysis on whether the trial court erred in denying defendant's motion to suppress. Having determined that Meekisho's question was a constitutional violation, we must now decide if that violation compels suppression of evidence discovered in the subsequent search of defendant's person and vehicle based on the circumstances. The general rule requires suppression if the evidence was "the product of an unconstitutional act." *Arreola-Botello*, 365 Or at 714; *see also Pooler v. MVD*, 306 Or 47, 52, 755 P2d 701 (1988) (explaining that an arrest is not invalid simply because a stop was unlawful; rather, an arrest is invalid if "it follows as a consequence of and depends upon" an unconstitutional stop). More specifically, in cases where the unlawful police conduct is followed by a defendant's voluntary consent to search, we examine whether the consent was "tainted" because it was a "product of" the unlawful conduct. *Unger*, 356 Or at 80. Here, Meekisho made the unlawful inquiry as defendant was stepping out of his vehicle to perform FSTs. Although the record does not show if or how defendant responded to Meekisho's inquiry, Meekisho immediately followed that unlawful inquiry with a request for consent to pat down and search his pockets, which defendant provided. Thus, the issue becomes whether defendant's consent to the patdown

and search of his pockets was tainted because it was a product of the constitutional violation.

In some situations, "a defendant's voluntary consent itself may be sufficient to demonstrate that the unlawful conduct did not affect or had only a tenuous connection to the evidence produced." *Arreola-Botello*, 365 Or at 714 (internal quotation marks omitted). The burden of proof on that issue rests with the state. *Id.* (explaining that "[i]t is the state's burden to prove that the consent was independent of, or only tenuously related to, the illegal police conduct" (internal quotation marks omitted)); *see also State v. Gabr*, 324 Or App 588, 596, 527 P3d 49 (2023) ("The state bears the burden of proof and persuasion that the violation of a defendant's rights had such a tenuous factual link to the disputed evidence that the unlawful police conduct cannot be properly viewed as the source of that evidence."); *State v. Jackson*, 268 Or App 139, 151, 342 P3d 119 (2014) (explaining that the state can rebut the presumption that evidence was tainted by a constitutional violation and must be suppressed "by establishing that the disputed evidence did not derive from the preceding illegality" (internal quotation marks omitted)). The state did not argue before the trial court, nor does it argue on appeal, that defendant's consent to the patdown and search of his pockets was not affected by or was only tenuously related to Meekisho's unlawful inquiry. Thus, we readily conclude that the state did not carry its burden. Accordingly, the trial court erred in denying defendant's motion to suppress the evidence.

Finally, although no party on appeal addresses the issue, we must address the question of harmlessness because we have an independent obligation under the state constitution. *See, e.g.*, *State v. Sperou*, 365 Or 121, 140, 442 P3d 581 (2019). In so doing, we will affirm a judgment, despite any error committed at trial, if we determine that there is little likelihood that the particular error affected the verdict. *State v. Aguilar*, 307 Or App 457, 471, 478 P3d 558 (2020); *see also State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (explaining that, under Article VII (Amended), section 3, of the Oregon Constitution, an appellate court will affirm a judgment if there is "little likelihood that the particular

error affected the verdict"). Meekisho discovered heroin and methamphetamine during the search of defendant's pocket and later search of his vehicle, which was admitted during the bench trial to support his conviction of possession and delivery of both substances. For those reasons, we conclude that the trial court's error in failing to grant the motion to suppress was not harmless.[3]

Reversed and remanded.

---

[3] Our conclusion that the trial court erred in denying the motion to suppress obviates the need to address defendant's additional contentions raised on appeal, including the state's partial concession based on *State v. Hubbell*, 371 Or 340, 537 P3d 340 (2023).