308 February 28, 2024 No. 149

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

TREVOR JOHN SWAFFORD,
*Defendant-Respondent.*

Douglas County Circuit Court
20CR52771; A179398

Robert B. Johnson, Judge.

Argued and submitted on January 24, 2024.

Greg Rios, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Bruce A. Myers, Deputy Public Defender, argued the cause for respondent. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

The state appeals an order granting defendant's motion to suppress evidence found after an officer stopped him for failing to perform the duties of a driver and asked him a series of questions.[1] We affirm.

The state's argument on appeal is narrow: it asserts that the stop of defendant was justified by reasonable suspicion of hit and run, that, as part of the investigation of that offense, the officer was entitled to ask questions that were reasonably related to that investigation, and that all of the officer's questions were in fact reasonably related to the investigation of the hit and run. Stating the facts consistently with the trial court's implicit and explicit factual findings, *see State v. Holdorf*, 355 Or 812, 814, 333 P3d 982 (2014), we focus our factual discussion accordingly.

A motion-detection camera at a fish hatchery site captured movement, including a silhouette and a vehicle. Because the area around the hatchery was closed due to wildfires, an officer, Kercher, went to the site to investigate.

When Kercher arrived, he saw a truck drive through a yard onto a "burnt house pad" and then the truck hit "some objects," including a downed power pole. The truck also hit the "concrete wall of one of the fish barriers." In Kercher's view, the truck looked "like it was wanting to go anywhere but where [Kercher] was at."

As the truck came towards Kercher, he activated his lights and spoke with the driver, defendant. After asking defendant who he was, if he had any weapons, and what he was doing at the hatchery (defendant said he worked for a fire crew and was trying to get home), Kercher asked defendant to get out of his truck.

Kercher's purpose in stopping defendant was to investigate a potential hit and run. *See* ORS 811.700(1)(a) (a driver fails to perform the duties of a driver when they know or have reason to know that their vehicle was involved

---

[1] The offense "failure to perform duties of a driver when property is damaged," ORS 811.700(1)(a), is commonly referred to as "hit and run." *See State v. Hval*, 174 Or App 164, 166, 25 P3d 958, *rev den*, 332 Or 559 (2001) (noting the common usage of that shorthand).

in a collision that resulted in damage to property, and the driver does not immediately stop and investigate what their vehicle struck). Kercher also believed that defendant may have been taking "something" out of the area, given that no one was permitted in the area and what Kercher perceived as defendant's hasty attempts to leave. Kercher thus asked defendant why defendant was driving in a reckless, "panicked" manner. Defendant explained that he was frustrated and trying to get home. Kercher also asked defendant what he was still doing at the hatchery, given that it took Kercher time to get there after getting the call about the movement caught on the camera. Defendant explained that he was disoriented from the wildfire smoke. Kercher then asked defendant several additional questions:

- Whether defendant was "dig[ging] around in anything" while at the hatchery;

- Whether defendant had anything in his truck that belonged to the hatchery (defendant said no);

- Whether Kercher could look into defendant's truck to make sure that defendant did not have any stolen property from the hatchery; and

- Whether he had anything in the back of his truck that "doesn't belong" (defendant said no).

Defendant agreed that Kercher could look into his truck "from the outside[.]"[2] Kercher looked in the truck with the aid of a flashlight and saw a box of hip waders. Kercher then investigated whether any property was damaged. As Kercher did so, he saw a box of waders near a building with the same brand name as the ones in defendant's truck. After Kercher advised defendant of his *Miranda* rights, defendant admitted to taking waders from the hatchery.

Defendant moved to suppress "any and all evidence obtained from the stop." As relevant to the issue on appeal, he argued that Kercher had unlawfully extended the traffic stop to investigate other crimes. The trial court agreed with defendant, concluding that Kercher had "extend[ed] the

---

[2] The state did not argue below, or does not argue on appeal, that defendant's consent to search "from the outside" attenuated any prior taint of Kercher's questions. We therefore do not address that question.

scope * * * of the stop by investigating what the [d]efendant was doing at the [h]atchery" based on an "idea that maybe some theft had occurred" there.[3]

As noted above, on appeal, the state's argument is narrow. It does not argue that, either when Kercher first spoke to defendant or at some later point during the conversation, Kercher had reasonable suspicion that defendant had committed theft. Instead, the state argues that Kercher's questions about "theft from the hatchery site" did not unlawfully extend the investigatory stop regarding hit and run, because there was a "reasonable, circumstance specific relationship" between Kercher's questions and the purpose of the stop (the hit and run).[4] *See State v. Pichardo*, 360 Or 754, 759-60, 388 P3d 320 (2017) (Where there is "a 'reasonable, circumstance-specific' relationship between [an officer's questioning] and the purpose of the stop," the questioning will not unlawfully extend the investigative stop. (Quoting *State v. Jimenez*, 357 Or 417, 429, 353 P3d 1227 (2015).)); *see also State v. Watson*, 353 Or 768, 781, 305 P3d 94 (2013) (If an officer has justification to temporarily detain a suspect to investigate a crime, the officer may ask questions that are "reasonably related to that investigation and reasonably necessary to effectuate it."). In the state's view, the questions that Kercher asked defendant were "designed to ascertain the circumstances and potential motive that led to defendant's hit-and-run conduct."

The state's argument sweeps too broadly. As defendant observes, adopting a general rule that an officer may

---

[3] The trial court also ruled that Kercher had unlawfully asked defendant to get out of his truck, because that request was not supported by officer-safety concerns. The state challenges that ruling on appeal, and defendant concedes that the trial court's ruling in that respect is incorrect. Because we conclude that Kercher's later questions were impermissible, we do not reach that issue.

[4] As noted, the trial court ruled that all the questions that Kercher asked after defendant got out of the truck were unlawful. On appeal, the state focuses on the questions that were aimed at determining whether, in addition to hit and run, defendant may also have committed a theft, contending that those questions were permissible as part of the stop to investigate the hit and run. As we explain below, while the initial questions about why defendant was driving in a reckless fashion were permissible, the additional theft-related questions were not permissible as part of the stop for hit and run. The evidence that Kercher discovered was directly related to those latter, impermissible questions. And because the state does not contend that defendant's answers to the initial questions justified an expansion of the stop to include investigation of theft, we do not consider that possibility.

inquire into any potential motive that a person may have for committing a crime would allow an infinite number of inquiries, an outcome that is inconsistent with the requirement that the questions must be "reasonably necessary" to effectuate the purpose of the stop. *Watson*, 353 Or at 781. Rather, Article I, section 9, of the Oregon Constitution requires a closer connection between the purpose of the stop—here, hit and run—and the questions that an officer poses. *See, e.g.,* *State v. Bradley*, 329 Or App 736, 741-43, 542 P3d 56 (2023) (asking a defendant during a traffic stop whether he had "anything on [him] that [he was] not supposed to have" was not reasonably necessary to effectuate the stop for driving under the influence of intoxicants).

As applied here, while some of Kercher's initial questions about why defendant was driving in the manner in which he was driving were permissible because they were closely connected to the investigation for hit and run—which involves colliding with property and failing to stop—asking defendant whether he had anything that "doesn't belong" does not satisfy that standard. Similarly, asking defendant questions about whether he had been "dig[ging] around" in items at the hatchery and whether Kercher could search defendant's truck to see whether he had stolen anything bore no immediate relation to Kercher's investigation for hit and run. To be sure, if Kercher developed reasonable suspicion of theft or other related crimes, those questions would be permissible. But the state does not argue that he had that level of suspicion.

We disagree with the state's argument that *State v. Hernandez*, 299 Or App 544, 449 P3d 878 (2019), *rev den*, 266 Or 292 (2020), compels a different result. Not only was that case answering a different question—whether a search was proper as incident to arrest—than the one posed here, but the rationale for our decision is inapt in this context. In *Hernandez*, we concluded that evidence bearing on the defendant's motive was reasonably related to the crime that the officers were investigating, interfering with a police officer, because "it indicates that [the] defendant had a reason to disobey [a] lawful order," which, in turn, would tend to show that the defendant knowingly and intentionally refused the

officer's order. *Id.* at 549. In other words, the search was closely tied to one of the elements of the offense that the officers were investigating. Yet here, questions related to theft or possession of items that "don't belong" are not closely tied to elements of the offense of failing to perform the duties of a driver.

Affirmed.