428 May 1, 2024 No. 289

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ADALBERTO G. GUZMAN-GARCIA,
*Defendant-Appellant.*

Linn County Circuit Court
20CR53849; A178264

Michael B. Wynhausen, Judge.

Submitted March 14, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sarah De La Cruz, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Defendant appeals a judgment of conviction for one count of unlawful possession of methamphetamine, ORS 475.894. On appeal, he assigns error to the trial court's denial of his motion to suppress. Defendant contends that police unlawfully extended a traffic stop and a resulting investigation for driving under the influence of intoxicants (DUII) by asking defendant questions related to other investigations that police were conducting in the area. Reviewing the trial court's suppression ruling for errors of law and accepting the trial court's express and implied findings of fact as supported by constitutionally sufficient evidence, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), we reverse and remand.

*Preservation.* As a preliminary matter, the state contends that the argument defendant raises on appeal is not reviewable by this court, because defendant did not preserve it in the trial court. *See State v. Murphy*, 306 Or App 535, 539, 475 P3d 100 (2020), *rev den*, 367 Or 559 (2021) ("As a general matter, for us to address an argument on appeal, the adversely affected party must have preserved the claim of error before the trial court."). We disagree.

On appeal, relying on the Supreme Court's decision in *State v. Arreola-Botello*, 365 Or 695, 451 P3d 939 (2019), defendant argues that police "unlawfully extended the stop by asking defendant questions unrelated to the traffic stop or DUII investigation." Although defendant's argument on appeal is more precise and developed than it was in the trial court, in the trial court defendant cited *Arreola-Botello* and argued that the officers unlawfully exceeded the scope of the stop. *State v. Walker*, 350 Or 540, 550, 258 P3d 1228 (2011) ("Particularly in criminal cases, in which there is a premium on considerations of cost and speed, the realities of trial practice may be such that fairly abbreviated shorthand references suffice to put all on notice about the nature of a party's arguments."). We conclude that the policies underlying the preservation rule were sufficiently served in this case. *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009) ("Ultimately, the preservation rule is a practical one, and close calls *** inevitably will turn on whether, given

the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served.").

*The merits.* After lawfully stopping defendant for a traffic violation in a "high crime area," police developed reasonable suspicion that defendant was committing the crime of DUII. One of the officers present—Officer Norlander—who, as part of an unrelated investigation, was searching for a specific individual who lived nearby, then asked defendant a series of questions, including whether defendant lived in the area, why defendant was in the area, the name of the friend who defendant had come to the area to visit, and whether defendant had just been at work. During the suppression hearing, Norlander testified that in talking to defendant and asking those questions, he was seeking to elicit information for other investigations that he was conducting in the area. In other words, Norlander acknowledged that the questions were not related to the DUII investigation or the traffic infraction investigation but related to other investigations.

Article I, section 9, of the Oregon Constitution, requires that, during a traffic stop, "an officer's investigative questions and activities be reasonably related to the purpose that permitted the officer to stop the individual in the first place or to have an independent constitutional justification." *State v. Bradley*, 329 Or App 736, 741, 542 P3d 56 (2023). Consequently, here, the traffic violation committed by defendant and the potential DUII "defined the constitutionally permissible boundaries of the investigation and required that [law enforcement personnel's] questions and activities be reasonably related to [those] investigation[s] and reasonably necessary to effectuate [them]." *Id.* at 742 (internal quotation marks omitted). Norlander's questions, which Norlander testified were aimed at eliciting information for other investigations, exceeded those boundaries and were, therefore, a violation of defendant's rights under Article I, section 9. *See State v. T. T.*, 308 Or App 408, 417, 479 P3d 598, *rev den*, 368 Or 37 (2021) (noting "a traffic stop is * * * not an opportunity for a fishing expedition").

*The remedy.* We next turn to the remedy for that constitutional violation. As a general matter, "[w]hen police

obtain evidence of a crime after having violated a defendant's rights under Article I, section 9, of the Oregon Constitution, it is presumed that that evidence is tainted and must be suppressed." *State v. Campoverde*, 317 Or App 347, 354, 505 P3d 466, *rev den*, 369 Or 785 (2022) (internal quotation marks omitted). The state argues, however, that "[e]ven if defendant were correct that some of the officers' questions to him exceeded the scope of the inquiry that was permissible based only on the possible DUII offense, there is no basis to suppress evidence as a result of that violation." As the state sees it, suppression is not required in this case, because the evidence of defendant's alleged unlawful possession of methamphetamine was discovered later—after defendant voluntarily consented to a search—and defendant "did not disclose anything incriminatory during th[e] inquiry, and this record does not otherwise suggest that [defendant's] responses may have induced him to consent to the search."

We disagree with the state's argument regarding suppression. "[T]he state bears the burden of proving that evidence obtained after violating a defendant's constitutional rights was not the product of police exploitation of the unlawful conduct." *Id.* at 354. Although a "defendant's voluntary consent itself may be sufficient to demonstrate that the unlawful conduct did not affect or had only a tenuous connection to the evidence produced," *Arreola-Botello*, 365 Or at 714 (internal quotation marks omitted), that is not necessarily the case, *see State v. Unger*, 356 Or 59, 69, 333 P3d 1009 (2014) (explaining that a "causal connection requiring suppression *** may exist because the unlawful police conduct, even if not overcoming the defendant's free will, significantly affected the defendant's decision to consent" (internal quotation marks omitted)). Here, the state never raised its argument—an attenuation argument—in the trial court. Therefore, the trial court did not engage in the necessary "fact-specific inquiry" on whether the state had carried its burden of proof as to attenuation, and it would be inappropriate for us to affirm on the basis of attenuation. *State v. Escudero*, 311 Or App 170, 174, 489 P3d 569 (2021) ("Because the attenuation argument is raised for the first time on appeal, the trial court never engaged in the fact-specific inquiry on whether the state carried its burden

of proving that defendant's consent was independent of, or only tenuously related to, the unlawful police conduct."); *State v. Heater*, 271 Or App 538, 540, 351 P3d 776 (2015) (concluding that the record may have developed differently if the state had raised its "no exploitation" argument below).

Reversed and remanded.